# EXHIBIT W

 Gmail

**Mary Anne Zivnuska <mzivnuska@sandergroup.org>**

---

## FOIA Appellate Request DODOIG-2024-A-000019 Status
2 messages

---

**FoiaAppeals** <FoiaAppeals@dodig.mil>                                      Fri, Mar 1, 2024 at 2:07 PM
To: "mzivnuska@sandergroup.org" <mzivnuska@sandergroup.org>

Ms. Zivnuska,


We apologize for the delay in processing and responding to your appellate request DODOIG-2024-A-000019.  Your request is currently undergoing a legal review and we anticipate the Appellate Authority to take action in the near future. We have updated the case file and made appropriate notifications of your request for expedited processing and will continue to process to provide a response as quickly as possible.


If you have any questions regarding this matter, please contact the DoD OIG

FOIA Requester Service Center at 703-604-9775 or via email at

foiarequests@dodig.mil


Very respectfully,

FOIA Requester Service Center

Office of Inspector General

Department of Defense


Phone: 703-604-9775

Fax: 571-372-7498

Email: foiarequests@dodig.mil




**From:** Mary Anne Zivnuska <mzivnuska@sandergroup.org>
**Sent:** Thursday, February 29, 2024 11:06 AM
**To:** foiarequests <foiarequests@DODIG.MIL>
**Cc:** Robert Sander <rsander@sandergroup.org>; Cecilia Franceski <cfranceski@sandergroup.org>
**Subject:** [Non-DoD Source] DODOIG-2024-A-000019, Status / Request to Expedite


Dear Mr. Dorgan:


On behalf of Ms. Kristina Glines, The Sander Group submitted an appeal of FOIA Request DODOIG-2024-000019 on December 20, 2023, and DODIG acknowledged receipt the same day, assigning number DODOIG-2024-A-000019 to the appeal.

While we acknowledge DOD IG's processing of these requests under a first-in, first-out policy as set forth in 32 CFR 286.8, under the Freedom of Information Act a response was due by January 23, 2024.  See 5 U.S.C. 552 (a)(6)(A)(ii). Can you please let us know when DODIG will respond to DODOIG-2024-A-000019?

Although the response on the appeal is already untimely, Ms. Glines is quickly approaching a point at which she will be denied her due process rights, as the clock began yesterday on a clearance proceeding before DCSA concerning the events memorialized in the documents under request in the appeal, and her due process rights would be substantially prejudiced without access to the requested information.  **Please note that we now request expedited consideration of this appeal pursuant to 32 CFR 286.8(e)(ii)(A).**

You may reach us by email at rsander@sandergroup.org or mzivnuska@sandergroup.org, or by phone at 703-459-0442.

Sincerely,

Mary Anne Zivnuska


--

Mary Anne Zivnuska

The Sander Group, PLLC

https://www.sandergroup.org/


ATTENTION - CONFIDENTIALITY NOTICE:  This e-mail transmission (and/or the attachments accompany it) may contain confidential information which is protected by the attorney-client privilege, attorney work product, or other privilege.  The information is intended only for the use of the intended recipient.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.


This e-mail is from the Department of Defense Office of Inspector General {DoD OIG}. It may contain Controlled Unclassified Information {CUI}, including information that is Law Enforcement Sensitive {LES}, subject to the Privacy Act, and/or other privileges and restrictions that prohibit release without appropriate legal authority. Do not disseminate without the approval of the DoD OIG.  If received in error, please notify the sender by reply e-mail and delete all copies of this message.

---

**Mary Anne Zivnuska** <mzivnuska@sandergroup.org>                                    Fri, Mar 1, 2024 at 2:22 PM
To: FoiaAppeals <FoiaAppeals@dodig.mil>

Thank you, I appreciate the update and notifications on our request to expedite. Please let me know if there any more developments, or if there is anything more you need from me to facilitate the request.

V/r,
Mary Anne
[Quoted text hidden]

# EXHIBIT X

# REQUEST for RECORDS

DoD IG FOIA Requester Service Center
Attn: FOIA/PA Chief, Suite 17F18
4800 Mark Center Drive
Alexandria, VA 22350-1500

To request a copy of pertinent records from the above named agency, please provide a photocopy of your picture ID, along with this completed form and mail to the above address.

**Privacy Act Advisement:** Requesting personal information which includes your Social Security Number is authorized by 5 USC Sec. 552a (*Privacy Act of 1974*). Information provided herein is used to identify and retrieve records pertaining to you. Providing all or part of the information below is voluntary; however, without it, the above agency may not be able to identify your records. This information may be retained and/or released to other agencies under Routine Use.

**Authority:** E.O. 12968, Access to Classified Information; Department of Defense (DoD) Manual 5200.02, *Procedures for the DoD Personnel Security Program (PSP)*, April 3, 2017.

**Description of Records:** Under the provisions of the Privacy Act, and to respond to a Statement of Reasons (SOR) issued by the Defense Counterintelligence and Security Agency Consolidated Adjudication Services

**I hereby request a copy of the following records (fill in pertinent records description below):**
_please see attachment A_

**Identifying information is provided as follows:**

Social Security Number: ▮▮L.R. 5.4(f)▮▮

Full Name: _Kristina    Arlene   Glines_

Other Names Used: _N/A_

Date of Birth: _5.4(f)  82_      Place of Birth: ▮ L.R. 5.4(f) ▮

**Please mail my file to (physical address required):**

_C/o Robert Sander_

_6618 Saint Marks Court, Alexandria VA 22306_

Government e-mail address (.mil or .gov): _____

*"I declare under penalty of perjury under the laws of the United States of America that the foregoing information [concerning my identity] is true and correct."*

_[signature]_                          _3/11/24_
**Handwritten or CAC eSignature (required)**          **Date**

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

## ATTACHMENT A to DOD IG REQUEST FOR RECORDS

(a).     Defense Information System for Security, Incident Report, December 7, 2022

(b).     Department of Defense Inspector General, Defense Criminal Investigative Service, Report of Investigation, #2019002173-80SI-B0/F, October 26, 2022

(c).     Video Recording of DCIS interview, October 12, 2022

(d). All materials relating to the DOD IG and DCIS investigation of Blue Sky Innovators, Inc., also known as "BSI." These documents would likely be dated in the range of 4/1/2019 to 1/1/2023.

(e). All documents, notes, records, video and/or audio recordings, interviews, emails, text messages, and conclusions relating to the DOD IG, DCIS, and Navy investigation of Ms. Glines, whether they be generated by DOD, DCSA, DCIS, or by the Navy. These documents are expected to range from May 2019 through January 2023.

(f). Information, emails, text messages, notations, or other documents in which the report discussed in request (b), supra, was shared within the Navy, DCSA, DoD IG, or other Government agencies. These documents would be dated from October 2022 to the present.

(g). The interview notes, impressions, conclusions, and documentation (including video and/or audio recordings) of all interviews conducted in relation to the DOD and DCSA investigation of Ms. Glines. These email, text messages, videos and documents would be dated in the range of May 2019 through January 2023.

(h). All DOD, DCSA, DOD IG and DCIS requests for opinions, guidance, advice, or direction on the ethical matters pertaining to Ms. Glines. These documents would be dated from 2019 to the present.

(i). All information pertaining to the security review of Ms. Glines stemming from the DOD IG and DCIS investigation; including documentation of whether (and if so, how) DCSA, DOD IG, and DCIS staff informed any Navy action under procedural requirements of DODM 5200.02 and other applicable laws and regulations, from 2019 to the present.

# EXHIBIT Y



**OFFICE OF INSPECTOR GENERAL**
**DEPARTMENT OF DEFENSE**
4800 MARK CENTER DRIVE
ALEXANDRIA, VIRGINIA  22350-1500

March 7, 2024
Ref: DODIG-2024-000316

**SENT VIA EMAIL TO: rsander@sandergroup.org**
Mr. Robert Sander
The Sander Group, PLLC
6618 Saint Marks Court
Alexandria, VA  22306

Dear Mr. Sander:

This responds to your Freedom of Information Act (FOIA) request, as enclosed.  We received your request on March 1, 2024, and assigned it case number DODIG-2024-000316.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S.C. 552(c) (2006 & Supp. IV 2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

Please be advised that any documents that may be responsive to your request are compiled for a law enforcement inquiry and release, at this time, could reasonably be expected to interfere with the inquiry.  As such, 5 U.S.C. § 552 exemption (b)(7)(A) of the FOIA provides for withholding records or information compiled under these circumstances, as law enforcement inquiries are not limited to criminal actions but include civil actions and regulatory proceedings as well.  For this reason, we cannot release any responsive documents at this time.  Once the inquiry is complete however, exemption (b)(7)(A) may no longer apply, and you may re-submit your request.  Please note that, even after the inquiry is completed, responsive records may still be exempt from disclosure based on one or more FOIA exemptions.

If you consider this an adverse determination, you may submit an appeal.  Your appeal, if any, must be postmarked within 90 days of the date of this letter, clearly identify the determination that you would like to appeal, and reference to the FOIA case number above.  Send your appeal via mail to the Department of Defense, Office of Inspector General, ATTN: FOIA Appellate Authority, Suite 10B24, 4800 Mark Center Drive, Alexandria, VA 22350-1500, via email to foiaappeals@dodig.mil, or via facsimile to 571-372-7498.  However, please note that FOIA appeals can only examine adverse determinations concerning the FOIA process.  For more information on appellate matters and administrative appeal procedures, please refer to 32 C.F.R. Sec. 286.9(e) and 286.11(a).

You may contact our FOIA Public Liaison at FOIAPublicLiaison@dodig.mil, or by calling 703-604-9785, for any further assistance with your request.  Additionally, you may

March 7, 2024
Ref: DODOIG-2024-000316

contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, MD 20740-6001, email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.  However, OGIS does not have the authority to mediate requests made under the Privacy Act of 1974 (request to access one's own records).

If you have any questions regarding this matter, please contact our office at 703-604-9775 or via email at foiarequests@dodig.mil.

Sincerely,

Searle Slutzkin
Division Chief
 FOIA, Privacy and Civil Liberties Office

Enclosure(s):
As stated

2

# REQUEST for RECORDS

DoD IG FOIA Requester Service Center
Attn: FOIA/PA Chief, Suite 17F18
4800 Mark Center Drive
Alexandria, VA 22350-1500

To request a copy of pertinent records from the above named agency, please provide a photocopy of your picture ID, along with this completed form and mail to the above address.

**Privacy Act Advisement:** Requesting personal information which includes your Social Security Number is authorized by 5 USC Sec 552a (*Privacy Act of 1974*). Information provided herein is used to identify and retrieve records pertaining to you. Providing all or part of the information below is voluntary; however, without it, the above agency may not be able to identify your records. This information may be retained and/or released to other agencies under Routine Use.

**Authority:** E.O. 12968, Access to Classified Information; Department of Defense (DoD) Manual 5200.02, *Procedures for the DoD Personnel Security Program (PSP)*, April 3, 2017.

**Description of Records:** Under the provisions of the Privacy Act, and to respond to a Statement of Reasons (SOR) issued by the Defense Counterintelligence and Security Agency Consolidated Adjudication Services

**I hereby request a copy of the following records (fill in pertinent records description below):**

please see attachment A

**Identifying information is provided as follows:**

Social Security Number: ████████████

Full Name: Kristina    Arlene Glines

Other Names Used: N/A

Date of Birth: ████████   Place of Birth: Grand Rapids, MI

**Please mail my file to (physical address required):**

C/O Robert Sander

6618 Saint Marks Court, Alexandria VA 22306

Government e-mail address (.mil or .gov): _____

*"I declare under penalty of perjury under the laws of the United States of America that the foregoing information [concerning my identity] is true and correct."*

_____          3/11/24
**Handwritten or CAC eSignature (required)**          **Date**

THE CONTENTS OF THIS DOCUMENT ARE PROTECTED UNDER THE PRIVACY ACT OF 1974

## ATTACHMENT A to DOD IG REQUEST FOR RECORDS

(a).        Defense Information System for Security, Incident Report, December 7, 2022

(b).        Department of Defense Inspector General, Defense Criminal Investigative Service, Report of Investigation, #2019002173-80SI-B0/F, October 26, 2022

(c).        Video Recording of DCIS interview, October 12, 2022

(d). All materials relating to the DOD IG and DCIS investigation of Blue Sky Innovators, Inc., also known as "BSI." These documents would likely be dated in the range of 4/1/2019 to 1/1/2023.

(e). All documents, notes, records, video and/or audio recordings, interviews, emails, text messages, and conclusions relating to the DOD IG, DCIS, and Navy investigation of Ms. Glines, whether they be generated by DOD, DCSA, DCIS, or by the Navy. These documents are expected to range from May 2019 through January 2023.

(f). Information, emails, text messages, notations, or other documents in which the report discussed in request (b), supra, was shared within the Navy, DCSA, DoD IG, or other Government agencies. These documents would be dated from October 2022 to the present.

(g). The interview notes, impressions, conclusions, and documentation (including video and/or audio recordings) of all interviews conducted in relation to the DOD and DCSA investigation of Ms. Glines. These email, text messages, videos and documents would be dated in the range of May 2019 through January 2023.

(h). All DOD, DCSA, DOD IG and DCIS requests for opinions, guidance, advice, or direction on the ethical matters pertaining to Ms. Glines. These documents would be dated from 2019 to the present.

(i). All information pertaining to the security review of Ms. Glines stemming from the DOD IG and DCIS investigation; including documentation of whether (and if so, how) DCSA, DOD IG, and DCIS staff informed any Navy action under procedural requirements of DODM 5200.02 and other applicable laws and regulations, from 2019 to the present.

# EXHIBIT Z



March 7, 2024

Department of Defense, Office of Inspector General
ATTN: FOIA Appellate Authority
Suite 10B24, 4800 Mark Center Drive
Alexandria, VA 22350-1500
**(Via email only to foiaappeals@dodig.mil)**

**Re: Appeal of FOIA Denial DODOIG-2024-000316**

Dear FOIA Appellate Authority,

On behalf of Kristina Glines, and via official form in response to a Statement of Reasons received by the Defense Counterintelligence and Security Agency, The Sander Group, PLLC ("The Sander Group") sent The Department of Defense Office of Inspector General ("DODIG") a Freedom of Information Act ("FOIA") Request on March 1, 2024. This FOIA Request was received the same day, and DODIG assigned it case number DODOIG-2024-000316. (Attached as Exhibit 1). On March 7, 2024, FOIA, Privacy and Civil Liberties Office Division Chief Searle Sluzkin sent a form letter denying this FOIA Request (Attached as Exhibit 2). In their FOIA Request Denial and Response, the DODIG failed to even conduct a records search or review of the records under the unfounded assumption that the records sought might be excluded from the FOIA under 5 U.S.C. § 552(c). This denial is surprising, given the DODIG's obligation under the FOIA to make records available unless certain criteria are met, see 5 U.S.C. § 552. Based on the DODIG's Response, it appears as though the DODIG did not even attempt to determine whether such criteria applied to the individual documents requested, as apparently, no search for materials, much less a review of such records, was even conducted.

On March 7, 2024, DODIG sent a standard notification, which is nearly identical to a response that DCIS sent in response to a separate FOIA Ms. Glines submitted in November 2023. The instant FOIA response advises that the responsive documents may have been compiled for a law enforcement inquiry. Because DODIG did not even attempt to search for materials or conduct a review of any such records, the DODIG failed to uncover in their own systems that the inquiry closed in October, 2022.

DODIG claims that this letter is not a determination that the records are indeed exempt from FOIA under those sections, but advises that we can treat the letter as a negative determination—hence, the "final response" name given to its email response. Importantly,

DODIG did not advise that it was performing any search whatsoever, and there is no assertion that they even conducted a records search or review. Additionally, the FOIA Office's Response gives the negative implication that it does not intend to even begin its perfunctory obligations under the FOIA absent an appeal. This stance demonstrates a legal interpretation that reads DODIG's FOIA obligations out of the statute and improperly shifts the burden to requestors to justify the request before DODIG undertakes its own statutory obligations. We are thus compelled to use the FOIA appeal process not to make an appeal of a reasoned determination, but rather, to convince DODIG to take a first look at the materials.

Please consider this letter our appeal of the DODIG's refusal to search for the requested materials and review the documents. Neither 5 U.S.C. §552(b)(7)(A) nor the "rarely applicable" exclusion for "exceptional circumstances" 5 U.S.C. §552(c) (*see Shapiro v. United States DOJ*, 153 F. Supp 3d 253, 271 (D.D.C. 2016)) apply to exclude the search or production of records sought.

This non-response is even more egregious considering the submission of the standard Request for Records form provided by DCSA, which notes that the documents are required to "respond to a Statement of Reasons (SOR) issued by the Defense Counterintelligence and Security Agency Consolidated Adjudication Services." Ms. Glines is quickly approaching a point at which she will be denied her due process rights in a clearance proceeding before DCSA concerning the events memorialized in the documents under request in the appeal. **Please note that we now request expedited consideration of this appeal pursuant to 32 CFR 286.8(e)(ii)(A).**

## I.     <u>The Requested Records.</u>

Exhibit 1, FOIA request DODOIG-2024-000316, articulates which records The Sander Group requested. Ms. Glines has an interest in all of the requested records, of most interest are the records requested as follows:

(a)  Defense Information System for Security, Incident Report, December 7, 2022

(b)  Department of Defense Inspector General, Defense Criminal Investigative Service, Report of Investigation, #2019002173-80SI-B0/F, October 26, 2022

(c)  Video Recording of DCIS interview, October 12, 2022

(d)  All materials relating to the DOD IG and DCIS investigation of Blue Sky Innovators, Inc., also known as "BSI." These documents would likely be dated in the range of 4/1/2019 to 1/1/2023.

(e)  All documents, notes, records, video and/or audio recordings, interviews, emails, text messages, and conclusions relating to the DOD IG, DCIS, and Navy investigation of Ms. Glines, whether they be generated by DOD, DCSA, DCIS, or by the Navy. These documents are expected to range from May 2019 through January 2023.

We have reason to believe that the investigation into BSI (see Exh.1, request (d)) is also complete. The final response to the FOIA request suggests that if investigation is not completed, we can re-submit the request once completed. DODIG should have at a minimum done its due diligence and determined this status before denying the request. We also understand that Agent Rozman, who retired almost a year ago, told the Navy that DCIS "would not be bringing criminal charges."

**II.**     **5 U.S.C. § 552(b)(7)(A) Does Not Apply to the Requested Records.**

Exhibit 2, DODIG's denial of the FOIA request, claims that records which:

> may be responsive to your request are compiled for a law enforcement inquiry and release, at this time, could reasonably be expected to interfere with the inquiry. As such, 5 U.S.C. § 552 exemption (b)(7)(A) of the FOIA provides for withholding records or information compiled under these circumstances, as law enforcement inquiries are not limited to criminal actions but include civil actions and regulatory proceedings as well. For this reason, we cannot release any responsive documents at this time. Once the inquiry is complete however, exemption (b)(7)(A) may no longer apply, and you may re-submit your request. Please note that, even after the inquiry is completed, responsive records may still be exempt from disclosure based on one or more FOIA exemptions.

Exemption (b)(7)(A) includes:

> [r]ecords or information compiled for law enforcement purposes, **but only to the extent that the production** of such law enforcement records or information (A) **could reasonably be expected to interfere with enforcement proceedings**. (emphasis added).

DCIS investigated a question of whether Ms. Glines used her public position for private gain. The DCSA SOR references a completed report dated October 26, 2022. Enforcement proceedings on the matter, if any, were completed over a year ago. In the same time frame, DCIS reported to Navy that it "would not be bringing criminal charges." Although (b)(7)(A) need not only apply to criminal enforcement proceedings, DCIS does not handle non-criminal matters; the implication in this statement is that there will be no enforcement proceedings arising out of the subject investigation. Both sources suggest that any enforcement proceedings potentially affected by the report requested in request (b) are not an issue, and as such, the report should be released. Further, the documents in requests (c) and (e) arise out of that investigation and should also be released.

Based upon the Government's own records and despite all reasonable conclusions in the Government's favor, this material should not be withheld under exemption (b)(7)(A), and the exemption should certainly not be read to nullify the entirety of the request. It is undisputed that FOIA's "'limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.' Accordingly, these exemptions 'must be narrowly construed.'" *John Doe Agency v. John Doe Corp., 493 US 146, 152 (1989), citing Dept. of Air Force v. Rose,* 425 U.S. 352, 361 (1976). There is no reasonable way that exemption b(7)(A) can be seen to control the request such as to foreclose disclosure, much less the full disclosure claimed in the FOIA Request Denial.

### III.   5 U.S.C. § 552(c) Does Not Apply to the Requested Records.

The FOIA Request Denial does not comply with the FOIA by declining to search for records based on the possibility that the records might be excluded from the FOIA under 5 U.S.C. § 552(c).  This provision allows agencies, "under unusual circumstances," to treat responsive materials as if they were exempt from FOIA's application.  *Shapiro*, 153 F. Supp. 3d at 256 (D. D.C. 2016).  "The Section 552(c) exclusions are rarely applicable in principle and are even more rarely applied in practice. In the words of the Justice Department's own guide to FOIA, the exclusions are 'a novel mechanism for protecting certain especially sensitive law enforcement matters,' and are employed only in 'exceptional circumstances.'"  *Id.* at 271-272, citing U.S. Dep't of Justice, *Guide to the Freedom of Information Act: Exclusions 1* (last updated Mar. 5, 2014).  There are three subsections to 5 U.S.C. § 552(c), which we address in succession.  A cursory review of the materials would have demonstrated that 5 U.S.C. § 552(c) does not apply to the requested records.

### a.   5 U.S.C. § 552(c)(1) depends on successful application of criteria which do not apply to these records.

5 U.S.C. § 552(c)(1) reads as follows:
>      (1) Whenever a request is made which involves access to records described in subsection (b)(7)(A) **and**—
>>           (A) the investigation or proceeding **involves a possible violation of criminal law**; **and**
>>           (B) there is reason to believe that (i) the **subject of the investigation or proceeding is not aware of its pendency**, and (ii) **disclosure** of the existence of the records **could reasonably be expected to interfere with enforcement proceedings**,
>      the agency may, during only such time as that circumstance continues, treat the records as not subject to the requirements of this section.
>      5 U.S.C. § 552(c)(1) (emphasis added.)

Section 552(c)(1) requires that the investigation involve a possible violation of criminal law.  We have documents showing that DCIS Agent Rozman informed the Navy in October 2022 that DCIS determined there is no violation of criminal law.  Further, in order to apply the exemption, the subject of the investigation must not be aware of its pendency.  Ms. Glines, the subject of the investigation, is not only aware of its pendency, DCSA has told her that the investigation is complete.  Further, because there was no criminal conduct identified by DCIS, there will be no enforcement proceedings.  5 U.S.C. § 552(c)(1) cannot be a reason to deny the applicability of the FOIA to the records Ms. Glines requests.

### b.   5 U.S.C. § 552(c)(2) and (3) are not at issue for the requested records.

5 U.S.C. § 552(c)(2) depends on specific conditions concerning the request:

> Whenever informant records maintained by a criminal law enforcement agency under an informant's name or personal identifier are requested by a third party according to the informant's name or personal identifier, the agency may treat the

4

records as not subject to the requirements of this section unless the informant's status as an informant has been officially confirmed.

5 U.S.C. § 552(c)(2).

Ms. Glines did not ask for informant records, nor did she ask for records under an informant's name. No names were referenced in her FOIA request other than her own name. See Exh. 1. 5 U.S.C. §552(c)(2) does not apply to exclude Ms. Glines' request from the FOIA.

5 U.S.C. §522(c)(3) applies to records maintained by the Federal Bureau of Investigation pertaining to foreign intelligence or counterintelligence, or international terrorism, but only where the existence of those records is classified in the interests of national defense or foreign policy. Given Ms. Glines' interview by the DCIS, and what we know, the records requested concerning both Ms. Glines and/or BSI do not meet this standard. There is no likelihood that that any foreign intelligence or counterintelligence issues are addressed in the requested records. Further, the request is made to DODIG for records generated by DCIS, and there is no reasonable expectation that the FBI is a custodian for these materials. None of the criteria under 5 U.S.C. §552(c) apply to exclude the records Ms. Glines has requested from the FOIA.

## IV.    DODIG improperly shifted its agency burden and failed to conduct an adequate search.

DODIG, not Ms. Glines, bears the burden of demonstrating that it has complied with its obligations under FOIA. 5 U.S.C. § 552(a)(4)(B). Specifically, it bears the burden of demonstrating that it conducted an adequate search and properly withheld documents under one of the recognized exemptions. *Id.*; *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). That burden was not met here because DODIG proactively denied the request without even searching for the records to verify whether or not the rarely applicable provisions of 552(c) applied.

5 U.S.C. §552(a)(6)(A) sets forth the process for Agencies to respond to a FOIA request, and the requestor's appeal rights:

Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall—
**(i)** determine […] whether to comply with such request and shall immediately notify the person making such request of—
    **(I)** such determination and the reasons therefor;
    **(II)** the right of such person to seek assistance from the FOIA Public Liaison of the agency; and
    **(III)** in the case of an adverse determination—
        **(aa)** the right of such person to appeal to the head of the agency, within a period determined by the head of the agency that is not less than 90 days after the date of such adverse determination[.]
[…]
**(ii)** make a determination with respect to any appeal […]. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection. 5 U.S.C. § 552(a)(6)(a).

Reasons for denial to release particular pieces of information are often listed in what is known as a Vaughn Index.  It appears that DODIG's FOIA stance—in which it denies via form letter the requirement to search for records that might potentially be covered by 552(c)—systematically deprives the requestor of a functional appeal under 552(a)(6)(A)(i)(III).  At this time, there is no determination on the documents at issue, or reason given as required by 552(a)(6)(A)(i)(I).  The only apparent recourse would launch the requestor into a costly court battle over an improper first-time denial, without the benefit of seeking an administrative appeal for disagreements over the Agency's true first look.  Ms. Glines hopes that the Government will see its errors and amicably and properly comply with this FOIA Request in accordance with the law.

## V.     **Anticipatory arguments to possible DODIG responses.**

To preserve time and resources, we here respond to denials or redactions we might anticipate receiving based on FOIA exemption (b)(7), without any information on the particular denials or redactions DODIG seeks to make.

Noting FOIA exemptions, narrow construction, exemption (b)(7) includes:

[r]ecords or information compiled for law enforcement purposes, **but only to the extent that the production** of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual[.]

5 U.S.C. 552(b)(7), (emphasis added.)

The DOJ FOIA guide makes abundantly clear that Agencies seeking to withhold information under exemption (7) must demonstrate for each subpart that the information requested "could reasonably be expected" to cause the harm that the subsection seeks to prevent- - except for subparts (B) and (E), which requires that the Agency demonstrate that the disclosure would indeed cause the harm the subpart seeks to prevent. *Id*.

While these records may have originally been compiled for a law enforcement purpose, the other requirements of exemption (b)(7) are not met.  As discussed above, over a year ago DCIS determined that there was no criminal wrongdoing, and as such there are no enforcement proceedings to implicate (b)(7)(A), and no trial with which to interfere under (b)(7)(B).  Ms. Glines is requesting information about herself, so there is no reasonable expectation that granting her information about an investigation into her own conduct could be deemed an invasion into

her privacy, and no one else's privacy is implicated by the investigation into her conduct under (b)(7)(C). There is no reasonable expectation of confidential sources under (b)(7)(D). To the extent that there may be some unexpected confidential source referenced in the investigation, that information may be redacted to satisfy the requirement that information withheld under exemption (b)(7) may be withheld "only to the extent that" its production could be expected to disclose that source.

To the extent that the requested information reveals any techniques, procedures, or guidelines for law enforcement investigations, we expect that this would be a very limited portion of the documents requested. Further, exemption (7)(E) is one of the subparts requiring a more stringent standard of proof of harm—that is "would disclose" material otherwise exempted under (7)(E), and even then, that information could be redacted. Given that the investigation concerned allegations that Ms. Glines used her public position for private gain, there is no reasonable possibility that this report would endanger the life or physical security of any individual, and as such, there is no reasonable expectation that exemption (7)(F) would be a factor in any withholding of the report.

## VI.   <u>Conclusion.</u>

For the above reasons, we believe that DODIG should release the requested records and process this appeal on an expedited basis to avoid a deprivation of Ms. Glines' due process rights. To the extent that DODIG decides to deny any portion of the request, we request a Vaughn Index such that we may expedite court consideration of this matter.

Sincerely,

Robert J. Sander
6618 Saint Mark Court
Alexandria, VA 22306
(703) 459-0442
rsander@sandergroup.org

cc: Ms. Kristina Glines

Enclosures:

Exhibit 1, FOIA request DODOIG-2024-000316, March 1, 2024

Exhibit 2, FOIA Request Denial and Response, March 7, 2024

# EXHIBIT AA



**OFFICE OF INSPECTOR GENERAL**
DEPARTMENT OF DEFENSE
4800 MARK CENTER DRIVE
ALEXANDRIA, VIRGINIA  22350-1500

March 15, 2024

Ref:  Decision on DODOIG-2024-A-000019
DODOIG-2024-A-000026

Mr. Robert J. Sander
The Sander Group, PLLC
6618 Saint Mark Court
Alexandria, VA 22306

Dear Mr. Sander:

You filed Freedom of Information Act (FOIA) requests on behalf of your client, Ms. Kristian Glines, on November 20, 2023, and March 1, 2024, with the Department of Defense Office of Inspector General (DoD OIG) FOIA Office.  The FOIA Office assigned these requests case numbers DODOIG-2024-000019 and DODOIG-2024-000316 respectively.  In general, your FOIA requests sought various records relating to the DoD OIG and Defense Criminal Investigative Service (DCIS) investigations of Blue Sky Innovators, Inc., and your client.

On November 30, 2023, the FOIA Office responded to request DODOIG-2024-00019, and on March 7, 2024, responded to request DODOG-2024-000316, in both instances by withholding responsive records in full pursuant to the FOIA, specifically title 5, United States Code, section 552(b)(7)(A)).  The FOIA Office explained that any responsive records were compiled for law enforcement purposes and release could reasonably be expected to interfere with law enforcement proceedings.

We received your appeal of these decisions on December 20, 2023, and March 8, 2024, and assigned them appellate case numbers DODOIG-2024-A-000019 and DODOIG-2024-A-000026.  In your appeals, you asserted that the DoD OIG failed to conduct a records search or review for the requested records based on the unfounded assumption that they might be excluded from release by section 552(c) of the FOIA.  You also asserted that FOIA exemption (b)(7)(A) does not apply to the requested records. Furthermore, you requested a "Vaughn Index" to the extent the DoD OIG decided to deny any portion of the request, and you expressed the view that fees for processing your client's FOIA requests had been waived.

After considering the merits of your appeals, I have decided to provide a consolidated response.  After reviewing the information supporting the FOIA Office's initial responses, I have determined first, the FOIA Office did not invoke 5 U.S.C. §552(c) as a basis for excluding any records.  While the FOIA Office's responses refer to section 552(c), they do so as a standard notification included in all its FOIA responses to inform a requester that Congress has excluded three categories of law enforcement and national security records from the requirements of the FOIA.  This notification is made

because the DoD OIG, as a general matter, properly maintains records covered by section 552(c).  Including this notice simply informs all requestors that the scope of records responsive to a FOIA request processed by the DoD OIG would not include records falling within the exclusion granted by section 552(c).

Secondly, I determined that the FOIA Office, in coordination with DCIS, did conduct a search for responsive records.  However, a proper review and analysis of the records required by exemption (b)(7)(A) was not conducted.  More specifically, proper consideration of this FOIA exemption requires a document-by-document review in order to determine that records, or a category of records, if released would interfere with enforcement proceedings, as well as whether there are any reasonably segregable non-exempt portions.  This review process was not adequately performed.  As a result, and pursuant to title 32, Code of Federal Regulations, section 286.11(c), I am granting your appeal and remanding the requests to the FOIA Office for further review and processing, in coordination with DCIS, consistent with my determination.  You will receive a subsequent response from the FOIA Office to your requests.

After further consideration, I am denying your appeal with regard to your request for a Vaughn Index.  The practice of preparing a Vaughn Index is confined to litigation proceedings and not the administrative processing of a FOIA request by an agency.  Additionally, until further review of responsive records is conducted by the FOIA Office, there are insufficient factual and legal bases upon which to comment on any records that might be withheld.  Finally, your client will not be assessed fees for the FOIA requests.

This action closes your appeal.  You have the right to judicial review of this decision in a United States District Court, in accordance with 5 U.S.C. § 552(a)(4)(B).  Further, the Office of Government Information Services (OGIS), offers services to help resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  However, OGIS does not have the authority to mediate requests made under the Privacy Act of 1974 (request to access one's own records).  You may contact OGIS at 877-684-6448, ogis@nara.gov, https://ogis.archives.gov/, or via regular mail at National Archives and Records Administration Office of Government Information Services, 8601 Adelphi Road – OGIS, College Park, MD 20740-6001.

Sincerely,

HADJIYANE.PA
UL.1016221925

Digitally signed by
HADJIYANE.PAUL.101622192
5
Date: 2024.03.15 11:11:30
-04'00'

Paul Hadjiyane
General Counsel
Appellate Authority

# EXHIBIT BB



**OFFICE OF INSPECTOR GENERAL**
DEPARTMENT OF DEFENSE
4800 MARK CENTER DRIVE
ALEXANDRIA, VIRGINIA  22350-1500

March 19, 2024
Ref: DODOIG-2024-000119 (Remanded)
DODOIG-2024-000316 (Remanded)

**SENT VIA EMAIL TO: rsander@sandergroup.org**
Mr. Robert Sander
The Sander Group, PLLC
6618 Saint Marks Court
Alexandria, VA  22306

Dear Mr. Sander:

    This acknowledges receipt of the appellate review of your Freedom of Information Act (FOIA) requests on behalf of your client, Ms. Kristian Glines, for various records relating to the DoD OIG and Defense Criminal Investigative Service (DCIS) investigations of Blue Sky Innovators, Inc.  The appellate authority remanded your requests DODOIG-2024-000119 and DODOIG-2024-000316, to the FOIA Office for additional processing on March 15, 2024.

    Your request for expedited processing is granted. Your requests have been assigned to the expedited processing queue and have been placed in chronological order based on the date of receipt and will be handled as quickly as possible. The FOIA provides that agencies may extend time limits when "unusual circumstances" are met during the processing of a request. See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii). Due to the need for a search in an external office, this office will not be able to meet the 20-business day response time. If you would like to narrow the scope of your request for records in order to achieve a timelier response, please contact our office at 703-604-9775 or by email at foiarequests@dodig.mil. You may also contact our FOIA Public Liaison at 703-604-9785 for further assistance.

    Lastly, you may seek dispute resolution services and assistance with your request from the Office of Government Information Services (OGIS) at 877-684-6448, ogis@nara.gov, or https://ogis.archives.gov/.  You can also contact OGIS via regular mail at National Archives and Records Administration, Office of Government Information Services, 8601 Adelphi Road–OGIS, College Park, MD 20740-6001.  Please note that OGIS mediates disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  However, OGIS does not have the authority to mediate requests made under the Privacy Act of 1974 (request to access one's own records).

    Sincerely,

    Eric R. Powers
    Government Information Specialist
     FOIA, Privacy and Civil Liberties Office

EXHIBIT CC

**CUI**

**INSPECTOR GENERAL**
**DEPARTMENT OF DEFENSE**
DEFENSE CRIMINAL INVESTIGATIVE SERVICE

**2019002173-80SI-B0/F**                                                          **October 26, 2022**

████████████████, **INCORPORATED, Fairfax, VA**
(b)(7)(A), (b)(6), (b)(7)(C) ████████

**GLINES, KRISTINA** ████████
(b)(7)(A), (b)(6), (b)(7)(C) ████████
████████████████████

DISTRIBUTION:
(b)(7)(A) ████████████
████████████████
████████████████████
████████████████████
████████████████████
████████████████████
████████████████

| Designation Indicator: | WARNING |
|---|---|
| **Controlled by:** DCIS<br>**CUI Category:** LEI/INV/PRVCY<br>**Limited Dissemination Control:** FEDCON<br>**POC:** (b)(6), (7)(C) | ~~This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.~~ |

**2019002173-80SI-B0/F**                                                                 2

**Synopsis:**
From at least 2015 to present, Kristina A. Glines, GS-15, Director of Security, Department of the Navy Special Programs Office/Department of the Navy Special Access Program Central Office, Pentagon, Washington, D.C., knowingly and willfully, violated her basic obligation of public service, which holds that public service is a public trust. Glines placed private gain ahead of her loyalty to the Constitution, ethics laws, and ethical principles. Glines held financial interests that conflicted with the conscientious performance of her duties, used nonpublic Government information to further a private interest, used public office for private gain, failed to act impartially, and gave preferential treatment to a private entity. These improprieties pertain to Glines imputed interest in ███████████████████████, a company her husband owns and operates.

**Statutes:**
The following violations of the United States Code (U.S.C.) and Code of Federal Regulations (C.F.R.) apply to this investigation:

- 18 U.S.C. § 208 - Acts Affecting a Personal Financial Interest;
- 5 C.F.R. § 2635.402 - Disqualifying Financial Interest;
- 5 C.F.R. § 2635.501 - Impartiality in Performing Official Duties;
- 5 C.F.R. § 2635.502 - Personal and Business Relationships;
- 5 C.F.R. § 2635.701 - Misuse of Position;
- 5 C.F.R. § 2635.702 - Use of Public Office for Private Gain;
- 5 C.F.R, § 2635.703 - Use of Nonpublic Information.

**Background:**
This investigation was opened on May 30, 2019, via a referral from (b)(7)(A), (b)(6), (7)(C) (b)(7)(A), (b), (6), (7)(C) Department of Defense (DoD) Special Access Program Central Office (SAPCO), Pentagon, Washington, D.C., regarding questionable Special Access Program (SAP) accesses for ████████████████ employees and questionable business practices. ████ questioned the high number of SAP accesses being processed, with hundreds of programs each being nominated. ████ also took umbrage with the spouse of ████████████ President and Chief Executive Officer, who used her official U.S. Government position to benefit her and her husband's financial position, potentially amounting to an organizational conflicts of interest. ████ expressed concern with the following personnel:



- ████████████, President and Chief Executive Officer, ████████████;
- (b)(7)(A), (b)(6), (b)(7)(C) (b)(7)(A), (b), (6), (b)(7)(C) ████████████ & ████████████, Assistant Secretary of the Air Force for Acquisitions, Special Programs (SAF/AQL), █(7)(A), (b)(6), (7)(C)
- (b)(7)(A), (b)(6), (b)(7)(C), (b)(7)(A), (b), (6), (b)(7)(C) ████████████;
- (b)(7)(A), (b)(6), (b)(7)(C), Employee, ████████████ (b)(7)(A), (b), (6), (b)(7)(C)

**WARNING**
~~This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.~~

**2019002173-80SI-B0/F**                                                            3

- Kristina Glines, Directory of Security, Department of the Navy Special Programs Office/Department of the Navy SAPCO (N9SP).

A SAP is a program activity that imposes additional controls governing access to classified information involved with such programs beyond those required by normal management and safeguarding practices. These additional controls may include, but are not limited to, access approval, adjudication or investigative requirements, special designation of officials authorized to determine a need-to-know, or special lists of persons determined to have a need-to-know.

Based on the DoD SAPCO referral, the Defense Criminal Investigative Service (DCIS), Sensitive Investigations Unit, Alexandria, Virginia, opened a criminal investigation to determine the veracity of the allegations. (b)(7)(A)

**Narrative:**

████████████████████████████████ **BACKGROUND**

1. ████████████ is a small business specializing in professional services supporting U.S. Government customers within the DoD and the Intelligence Community (IC). ████████ ████████ specializes in the following professional services:

- (b)(7)(A)
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 

2. ████ started ████████████ in 2013 as an individually owned limited liability company supporting DoD customers.  In 2016, ████ converted his company into a subchapter S-

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

CUI

**2019002173-80SI-B0/F**                                                                                    4

Corporation and added three new partners.  The following three corporate officers joined ███████
███████████ :

- (b)(7)(A), (b)(6), (7)(C)
- 
- 

3. ███████████████ divided ownership amongst the four owners, with the majority ownership
held by ███████████ Innovators ownership percentages are:

- ███████, President and Chief Executive Officer, 28.75% ownership;
- (b)(7)(A), (b)(6), (7)(C)
- 
- 

4. ███████████ is a registered corporation in the Commonwealth of Virginia.  █████
███████ is a corporate entity (Not Tax Exempt), business, subchapter S-Corporation, and for-
profit organization.  █████, (b)(7)(A), (b)(6), (7)(C)
(b)(7)(A), (b)(6), (7)(C)

5. ███████████████ registered business address was (b)(7)(A), (b)(6), (7)(C)
(b)(7)(A), (b)(6), (7)(C) (Attachment 1).  On March 26, 2022,
███████ changed their corporate address from (b)(7)(A), (b)(6), (7)(C)
(b)(7)(A), (b)(6), (7)(C) (Attachment 2).  LiquidSpace owns and
operates this new business address.  LiquidSpace leases workspace, offices, conference rooms,
etc., for use by companies such as ███████████ .

6. ███████████ is registered in the General Services Administration (GSA) Systems for
Award Management (SAM) database.  ███████████ has been registered in GSA SAM
since July 9, 2013.  ███████████ is an active U.S. Government contractor eligible for all
Federal agency contract awards, is in good standing, and without any exclusions – e.g. debarred,
suspended, proposed for debarment, or declared ineligible for the award of contracts by any
Federal agency.  ███████████ operates via Commercial and Government Entity
(CAGE) code 6XNZ7 (Attachment 3).

7. ███████████ is a cleared DoD contractor.  In 2016, the Defense Counterintelligence
& Security Agency (DCSA) issued ███████████ a TOP SECRET Facility Clearance
(FCL) (Attachment 4).  ███████████ maintains a valid FCL, which allows them to
access, possess, and work with classified information up to and including TOP SECRET.  ███████
███████████ is an access elsewhere facility with no safeguarding or automated information
systems at the FCL's registered address, (b)(7)(A), (b)(6), (7)(C)

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative
Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

**CUI**

2019002173-80SI-B0/F                                                                            5

8. All corporate officers maintain TOP SECRET personnel security clearances with sensitive compartment information and SAP eligibility. ████████████ has had several Facility Security Officers (FSO) throughout their existence. (b)(7)(A), (b)(6), (7)(C)
(b)(7)(A), (b)(6), (7)(C)
████████████████████████████████████████████████████

9. DCSA confirmed ██████████████ performed classified work on DoD classified contracts requiring access to classified material, to include SAP access (Attachments 5, 6, and 7). (b)(7)(A)
(b) (7)(A)
████████████████████████████████████████████████████

████████████████████████, **INCORPORATED FEDERAL AGENCY CONTRACTS**

10. According to publicly available information, ████████████ has a limited Federal agency contractor presence and a complete absence of contracts with the DoD. Dunn & Bradstreet Federal Information reports indicated a complete absence of federal agency contracts (Attachment 8). The Federal Procurement Data System (FPDS) reported ████████████ had only one federal agency contract award (Attachment 9). This federal agency contract is the General Services Administration (GSA) Professional Services Schedule (PSS) Contract #: 47QRAA20D001N. The PSS is a GSA Indefinite Delivery Indefinite Quantity, Multiple Award Schedule, Firm Fixed Price contract wherein ████████████ is a contract holder (Attachment 10).

11. The DoD Office of General Counsel, Standards of Conduct Office (SOCO), prepares and releases an annual report entitled, *"DoD Vendors with Awards of $25,000.00 and over FPDS Data"* identifying prime contractors who have received DoD contracts awards greater than $25,000. ████████████ was not listed in the FY2016, FY2017, FY2018, FY2019, FY2020, and FY2021 *annual "DoD Vendors with Contracts of $25,000.00 and over"* reports (Attachment 11).

12. (b) (7)(A)
████████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████

- (b) (7)(A)
  ████████████████████████████████████████
  ██████████████

- (b) (7)(A)
  ████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                                6

13. (b)(7)(A)



**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

CUI

2019002173-80SI-B0/F                                                                     7



14. (b)(7)(A)

**SPECIAL ACCESS PROGRAM ACCESSES**

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

CUI

**2019002173-80SI-B0/F**                                                                           8

15. ████████████ maintains a significant presence in the DoD SAP community.  DoD
SAPCO, JADE, and Joint Access Database System (JADS) queries confirmed extensive DoD
SAP read-ins for Blue Sky Innovator corporate officers and employees.  Specific SAP details
such as program name, type, and owner are not reportable in this document.  DoD SAPCO
maintains a full list of ██████████████ employee SAP accesses.

## ███████████ PERFORMANCE ON U.S. NAVY CONTRACTS

16. █████ leads ████████████████ performance on U.S. Navy classified contracts.  ██████, as
the President and CEO of ████████████████, entered into two subcontract agreements with
ECS Federal, Limited Liability Company (LLC), codifying their contractual relationship.  ████████
entered into the following two subcontract agreements with ECS Federal, LLC, on the following
U.S. Navy contracts:

- Contract Number:  N3237B-13-C-2010
- Prime Contractor: ECS Federal, LLC
- Customer:  U.S. Navy, Office of Naval Research (PMR-51)
- Contract Description:  CLASSIFIED
- Subcontract Agreement Execution Date:  May 1, 2017 (Attachment 14)

- Contract Number: N3237B-15-D-6816
- Prime Contractor: ECS Federal, LLC
- Customer:  U.S. Navy, Office of Naval Research (PMR-51)
- Contract Description:  CLASSIFIED
- Subcontract Agreement Execution Date:  March 16, 2020 (Attachment 15)

17. These classified contracts have DoN SAP equities that fall under the oversight of ██████'s
spouse – Kristina A. Glines, Director of Security, Department of the Navy Special Programs
Office/Department of the Navy SAPCO (N9SP), Pentagon, Washington, D.C.

18. ████████████ is the President and CEO of ████████ ████ (b)(7)(A), (b)(6), (7)(C)
████████████████ .
(b)(7)(A), (b)(6), (7)(C)
████████████████████████

19. (b)(7)(A), (b)(6), (7)(C)
████████████████████

20. (b)(7)(A), (b)(6), (7)(C)
████████████████████
████████████████████
████████████████████
████████████████

WARNING
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative
Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                            9

21. ████ (b)(7)(A), (b)(6), (7)(C)
(b)(7)(A), (b)(6), (7)(C)

22. As a small business, ████████ corporate officers perform multiple roles from running the company to working directly on a Federal agency contracts.  As the President and CEO of ████████, ████ leads the company, oversees company operations, establishes business strategies, and makes important corporate decisions that impact the company's brand and financial health. ████ bills this time, while performing ████ President and CEO duties, as an indirect cost – cost not related to a specific service provided directly to a federal agency contract. ████ bills his indirect labor as both overhead and General and Administrative (G&A) labor.  Overhead costs support the efforts of the direct labor workforce not performing work on a specific contract. G&A are the residual cost necessary to run a business such as labor for strategic planning, business development efforts, and to manage and perform administrative functions.

23. ████ also works on Federal agency contracts where he provides professional services, in most cases, Systems Engineering and Technical Assistance (SETA) support to various Federal agency customers.  In this capacity, ████ bills his time as direct labor – labor that is provided directly to a customer.  The cost of direct labor is considered the cost of regular hours, shift differentials, and overtime hours worked by an employee.

24. As a representative example of ████'s direct labor billing on Federal agency contracts, ████ worked and billed his time at DARPA as a ████████ SETA. ████'s work at DARPA is very extensive.  While supporting DARPA, ████ worked on a multitude of programs, to include, but not limited to, Rapid Attack Detection, Isolation and Characterization Systems, Cyber Fault-tolerant Attack Recovery, Communications in Contested Environments, ADAPTable Sensor System, Integrated Sensor is Structure, Flow based Information Theory Tracking, Large Area Coverage Search-Prior, and several classified cyber efforts.

**KRISTINA GLINES**

25. Kristina A. Glines is a Department of the Navy, Executive Branch, civilian federal employee of the U.S. Government and his been since she began federal career in February 2005.  Glines started her federal civil service career with the Department of the Navy, Navy Engineering Logistics Office (NELO) as a Security Specialist.  From 2005 to present, Glines maintained continuous employment with the Department of the Navy as a civilian federal employee.

26. During her career with the Department of the Navy, Glines worked at various commands, to include, but not limited to, NELO, Navy Systems Management Activity, and the Department of the Navy Special Programs Office/Department of the Navy SAPCO.  Glines held a variety of positions to include Security Specialist, Supervisory Security Specialist, Program Security Officer, Program Security Manager, and the Director of Security.  Glines currently holds the pay grade of GS-15.

**WARNING**

This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

27. According to *SECNAV Instruction 5460.4 – Mission, Functions, and Tasks of the Department of the Navy Special Access Program Central Office*, DoN SAPCO is responsible for the execution, management, oversight, administration, security, information systems and networks, information assurance, and records management for SAPs under the responsibility of the DoN. In her position as the Director of Security at DoN SAPCO, Glines is responsible for the protection of DoN SAPs and implementation of enhanced security requirements. Glines responsibilities include, but are not limited to, the following:

- Develop and promulgate policies and procedures for the security of DoN SAPs, to include insider threat policy for DoN SAPs;
- Exercise Access Approval Authority for all DoN SAPs for which the Secretary of the Navy is responsible and as delegated by agreement with non-DON entities;
- Maintain a master list of all access authorizations for DoN SAPs and of the individuals granted access;
- Establish, manage, and execute approval authority for DoN SAP access baselines;
- Evaluating continued access to DoN SAPs access for personnel who have committed security violations and/or have other derogatory information findings;
- Ensuring that security standards and policies are maintained and followed.

 **& KRISTINA GLINES MARRIAGE & FINANCIAL INTEREST**

28. A review of Glines' social media posts, National Background Investigation Bureau investigative file, and Questionnaire for National Security Positions, revealed Glines and █████ are married and began living together in 2011.

29. On ████████, Glines and █████ were legally married in Charlevoix County, Michigan wherein they became each other's spouse. The Charlevoix County Clerk's office issued a marriage certificate codifying their legal marriage. Glines' new married name was recorded as "Kristina Glines █████" (Attachment 16).

30. Although Glines listed her new name on the marriage certificate as "Kristina Glines █████," she does not use this name during the course of her official Government duties. Glines does not use this name on her Government e-mail accounts, on Government documents, Government issued identification, nor does she sign official documents using this name. Instead, Glines uses her maiden name – "Kristina Glines." Glines uses her maiden name on the following:

- DoD Common Access Card;
- U.S. Government E-mail Signature Block;
- U.S. Government Passport;
- Social Security Number;
- Virginia Driver's License;
- Virginia Vehicle Registration;
- LinkedIn Social Media Platform;
- E-mail Addresses

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

- o  kristina.glines@navy.mil (NIPRNet)
- o  kristina.glines@navy.smil.mil (SIPRNet)
- o  glinesk@nmic.ic.gov (JWICS)

31. In June 2015, Glines reported on her "Electronic Questionnaire for Investigations Processing" form that she married ▮▮▮▮ on ▮▮▮▮▮▮▮▮▮ and had not legally changed her name; however, she "informally" goes by her husband's last name Kristina ▮▮▮. During Glines' enhanced subject interview for her security clearance, on January 5, 2016, Glines addressed the use of her maiden name vice the use of her married name.  Glines reported she listed her name as Kristina ▮▮▮ on her marriage certificate and on Facebook; however, reported "She does not sign any official documents with the name [Kristina ▮▮▮] or use it for any other reason.  When she listed [Kristina Glines ▮▮▮] on her marriage certificate her intention was to switch everything over to that name but found the process to be difficult and time consuming and decided to continue using the name Kristina Glines."

32. Without personal knowledge that Glines is married to ▮▮▮, or Glines voluntarily disclosing her marriage to ▮▮▮, a reasonable person would not readily know Glines is married and maintains a "covered relationship" to ▮▮▮.  Glines' use of her maiden name effectively obfuscates any perceived or actual personal and/or financial conflicts of interest concerns a reasonable person might have regarding Glines, ▮▮▮, and ▮▮▮▮▮▮▮▮▮▮▮▮.

33. Glines has a direct and imputed financial interest with her husband and his company, ▮▮▮▮▮▮▮▮▮▮.  Glines and ▮▮▮ live together and share a mortgage on their home (Attachment 17).  Glines told DCIS that she shares financial interest with her husband as joint owners and signatories on loans, bank products, and investments, to include but not limited to, their home mortgage, savings account, checking account, stocks, mutual funds, credit cards, etc.  Glines reported she and ▮▮▮ file federal and state income tax as married filing jointly.

34. Glines maintains a "covered relationship" with her husband ▮▮▮.  This "covered relationship" exist because they are members of the same household, are legally married, have a close personal relationship, and ▮▮▮ serves as an officer of ▮▮▮▮▮▮▮▮▮.

## STANDARDS OF ETHICAL CONDUCT FOR EMPLOYEES OF THE EXECUTIVE BRANCH

35. Glines, as an employee of the executive branch of the U.S. Government, has an obligation to abide by *5 C.F.R. § 2635 - Standards of Ethical Conduct for Employees of the Executive Branch*. The basic obligation of public service is that it is a public trust.  Each employee has a responsibility to the U.S. Government and its citizens to place loyalty to the Constitution, laws, and ethical principles above private gain.  To ensure that every citizen can have complete confidence in the integrity of the Federal Government each employee shall respect and adhere to the principles of ethical conduct.  The general principles apply to every employee.  These general principals include, but are not limited to, the following:

- Public service is a public trust, requiring employees to place loyalty to the Constitution, the laws, and ethical principles above private gain;

WARNING
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                                 12

- Employees shall not hold financial interests that conflict with the conscientious performance of duty;
- Employees shall not engage in financial transactions using nonpublic Government information or allow the improper use of such information to further any private interest;
- Employees shall not use public office for private gain;
- Employees shall act impartially and not give preferential treatment to any private organization or individual;
- Employees shall endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards set forth in this part.  Whether particular circumstances create an appearance that the law or these standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts.

36. As a DoD and DoN employee, Glines is subject to additional rules, regulations, and guidance regarding ethical conduct.  They include the following:

- 5 C.F.R. § 3601 - Supplemental Standards of Ethical Conduct for Employees of the Department of Defense;
- DoD Directive 5500.07-R - Joint Ethics Regulation;
- The Department of the Navy Core Values Charter;
- Navy Code of Ethics.

37.  Additionally, DoD personnel have been reminded about their obligations to perform their jobs ethically.  The most recent guidance includes the following:

- On September 18, 2019, the Honorable Mark Esper, Secretary of Defense, issued a memorandum to all DoD personnel entitled "Reaffirming Our Values and Ethical Conduct." In his message, Esper reiterated that DoD personnel must practice and exercise ethical decision making and it must become a daily task and habit.  Esper directed all DoD personnel to complete annual ethics training.

- On February 5, 2020, Secretary of Defense Esper issued a memorandum to all DoD personnel entitled "Ethical Conduct and Political Activities."  This was follow-on guidance from the September 18, 2019 memorandum wherein he reemphasized ethical conduct, political activities, and reaffirmed annual ethics training requirements.

- On March 29, 2022, The Honorable Carlos Del Toro, Secretary of the Navy, issued an "Annual Ethics Message" wherein he reminded DoN personnel about the concept of integrity and that it expanded to all employees of the DoN – officers, enlisted, and civilian personnel.

38. Glines, as an employee of the DoD/DoN, has been exposed to, and consistently reminded of, her moral and ethical obligations she must follow as a DoD/DoN senior civilian federal employee.

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

CUI

2019002173-80SI-B0/F                                                                                    13

## ETHICS TRAINING

39. Glines reported to DCIS she has received ethics training throughout her federal career. Electronic training records obtained from the DoN Total Workforce Management Services (TWMS) system confirmed Glines took ethics training.  Only Glines' 2019 and 2020 ethics training record, could be located (Attachment 18).  Glines took the following ethics training courses:

- November 19, 2020 - DON Initial and Annual Ethics Training Course V.3;
- November 18, 2020 - DON Initial and Annual Ethics Training Course V.3;
- February 18, 2020 - DON Annual Ethics Training V2;
- September 16, 2019 - Annual Ethics Training.

40. A review of the ethics training modules revealed the ethics training addressed a multitude of topics and required an end of course examination (Attachment 19).  The training included, but was not limited, to the following topics:

- 18 U.S.C. § 208 – Acts Affecting a Personal Financial Interest;
- Principals of Ethical Conduct;
- Financial Conflicts of Interest;
- Impartiality;
- Misuse of Position;
- Ethics Advice.

41. The training further instructs the student to consult their ethics counselor to determine whether their participation would be considered personal and substantial, whether the particular matter would have a direct and predictable effect on their financial interest, and whether they may avail themselves on any exemptions - "Seek Early Advice: Consult Your Attorney."

42. The training stated as a general rule, "Do not work on matters in which <u>YOU</u> have a financial interest.  In following this rule, employees should keep in mind that the financial interests of others – including a spouse, minor child, and certain entities - are imputed to them."

43. Furthermore, the training reiterates financial interest are imputed to the Government employee via a spouse, minor child, general partner; and an organization in which the employee serves as an officer, director, general partner, or employee.

44. Remedial steps to resolve conflict of interest are addressed wherein an employee can take steps to avoid taking action on a matter in which they have a financial interest.  This includes divesting themselves of the conflicting financial interest, the employee being granted a waiver,, recusal/disqualification, reassignment, and changes of duties.

45. The training addresses impartiality in conducting official business.  Appearance of a loss of impartiality directs the employee not to participate in a particular matter involving specific parties without written supervisory approval if the matter is likely to affect the financial interest

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                                 14

of a member of the employee's household, and a person with whom the employee has a "covered relationship" is involved in the matter. The training defines an employee has a "covered relationship" with the following:

- A member of the employee's household;
- A relative with whom the employee has a close personal relationship;
- A person for whom the employee's spouse, parent, or dependent child is an employee;
- A person with whom the employee has a business or financial relationship;
- An organization in which the employee is an active participant.

46. Criminal statute *18 U.S.C. § 208 - Acts Affecting a Personal Financial Interest*, prohibits executive branch employees from working on U.S. Government matters that will affect their own personal financial interest, or the financial interest of other people, to include their spouse, minor child, or general partner. An executive branch employee should not act on a Government matter if a reasonable person who knew the circumstances of the situation could legitimately question their impartiality.

47. Impartiality could be questioned if the Government matter an executive branch employee worked on is likely to affect the financial interest of a member of their household, their spouse, minor child, or partner. Impartiality could also be questioned if a Government employee worked on a Government matter with someone with whom they had a "covered relationship" wherein they are a party or represent a party to a Government matter.

## KRISTINA GLINES – OGE FORM 450 - CONFIDENTIAL FINANCIAL DISCLOSURE REPORTS

48. Glines is an *OGE Form 450 – Confidential Financial Disclosure Report* filer. Glines completed and submitted OGE Form 450s to the NELO OGC Ethics Counselor in 2017, 2019, 2020, 2021, and 2022 (Attachment 20). In each such filing, Glines properly reported ███████ ██████ as a source of non-investment income via her spouse's salary. Glines properly reported ██████████ as an asset via her spouse's stock ownership in the company.

49. Reviewers reviewed the annual DoD SOCO *"DoD Vendors with Awards of $25,000.00 and over FPDS Data,"* but reported the Blue Sky listed in the report was a different Blue Sky than █ ██████████. Since "██████████, Incorporated" was not listed in the DoD SOCO report, Ethics Counselors had no reason to believe Glines had a conflicting personal financial interest. Hence, Ethics Counselors did not issue a "Conflict Letter" to Glines during the period 2017 to 2021.



50. In 2022, (b)(7)(A), (b)(6), (7)(C)███████, NELO, OGC, issued a "Conflict Letter" to Glines warning her that her OGE Form 450 revealed she, or her spouse, maintained a financial interest in ██████████, and that 18 U.S.C. § 208 prohibited her from taking any official action regarding an entity in which she holds a financial interest (Attachment 21).

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                                                                  15

51. A review of the *"FY 2021 DoD Vendors with Contracts of $25,000 and over (1/13/2022)"* report revealed "███████████████, Incorporated" was not listed in the report; however, there were similar companies with similarly sounding names, such as "Blue Sky Innovative Solutions, Incorporated" and "Blue Sky Industries, Incorporated." Neither is affiliated with ████████ ████████.. The report listed prime contractors, not subcontractors, to the DoD. ███████ issuance of the "Conflict Letter" appears to have been made erroneously based on the DoD SOCO report; however, the "Conflict Letter" is appropriate because of the potential personal conflict of interest posed by ████████████' performance on DoD contracts and Glines' position as an executive branch employee (Attachment 22).

## KRISTINA GLINES ETHICS GUIDANCE REQUEST

52. Glines' ethics training instructed her to consult her supervisor, ethics counselor, and/or recuse herself if she had any perceived or actual conflicts of interest. Glines demonstrated her understanding and obligation to do so on at least four occasions:

- Glines recused herself from the source selection team on the Contractor Support Services ███████ selection acquisition. She did so because she believed her husband's company could potentially support ███████████ . Glines reported this recusal occurred several years ago (Attachment 23). DCIS requested all ethics documents from DoN OGC for such recusals; however, there were no records produced for this recusal.
- In July/August 2022, Glines sought guidance from ██████████████████, N9SP and ████████████████ DoN, OGC. Glines had been selected as a member of the technical evaluations board for the N9SP Contractor Support Services contract re-compete. One of the bidders on the re-compete was American Systems Corporation. Glines reported her husband's company, ████████████████, had a subcontract with American Systems to provide SETA support to the Office of the Undersecretary of Defense for Research and Engineering. Glines requested a legal determination to determine if she should be involved in the acquisition. ███████████ believed Glines had an actual conflict of interest and recommend Glines have no direct involvement in the contractor evaluation and selection process; Glines complied with this ethics guidance (Attachment 24).
- In July 2022, Glines sought guidance from ████████████ regarding her requirement to list all prime contracts wherein ███████████ performs as a subcontractor on her OGE Form 450. ████████████ notified Glines that she did not need to list all the "primes/subs" of ████████████ on her OGE Form 450. ████████████ reported OGC would deal with these situations on a case-by-case basis (Attachment 24).
- Sometime in July/August 2022, Glines notified her supervisor, ██████████████████, N9SP, that her husband, was under investigation, but did not know why or for what. Glines notified ████████████ about the investigation because Glines was not sure if and/or how it would or might affect her role as the Director of Security at N9SP. Glines told ████████ she had done nothing wrong and the investigation was all about her husband (Attachment 25). Although Glines notified ████████████ of an investigation into her husband circa July/August 2022, ████ was likely aware of the DCIS investigation as early as October 20, 2021. On this date, DCIS and ████████████ interviewed ██████████████ a ████████████ employee, about the issues raised by DoD SAPCO. ████████ was fully aware of the DCIS investigation upon receipt of

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                                                      16

two DoD Office of Inspector General subpoenas served on December 3, 2021 and April 4, 2022.

53. Glines confirmed these were the only times she sought ever sought ethics guidance and notified her supervisor of any perceived or actual conflicts of interest.

### KRISTINA GLINES VOLUNTARY INTERVIEW WITH THE DEFENSE CRIMINAL INVESTIGATIVE SERVICE

54. On October 12, 2022, DCIS Special Agents executed a voluntary interview of Glines at the Pentagon, Washington, D.C. (Attachment 26). Reporting Agent read, explained, and executed a *DCIS Form 70 – Warnings and Assurances to Employee Requested to Provide Information on a Voluntary Basis (Garrity)* with Glines. Glines acknowledged her rights, signed the form, and agreed to speak voluntarily with agents. The interview was recorded and transcribed (Attachment 23).

55. During the interview, Glines admitted that she had used her official position to help her husband and his company, ███████████. Furthermore, she failed to recuse herself from matters in which she had a personal financial interest/conflict of interest, and failed to seek guidance and/or report all perceived or actual conflicts of interest to her supervisor and/or DoN attorneys. Glines acknowledged that she had received ethics training throughout her DoN career and knew she had an obligation to seek guidance, report her conflicts, and recuse herself in matters involving her husband's company. She acknowledged that she did not do this for every conflict involving ███████.

### KRISTINA GLINES FAILURE TO RECUSE HERSELF IN (b)(7)(A), (b)(6), (b)(7)(C) SPECIAL ACCESS PROGRAM SUSPENSION



56. On August 20, 2020, (b)(7)(A), (b)(6), (b)(7)(C), SETA, ███████████, committed a security violation while assigned to the DARPA, (b)(7)(A) ███████████.

57. Investigative action confirmed ███ was a ███████████ employee at the time of the incident. ███ supported DARPA as a SETA via a (b)(7)(A) ███████ contract awarded to (b)(7)(A) ███. ███ support to DARPA was codified in a subcontract agreement executed between (b)(7)(A) and ███ (Attachment 29). The contract, valued at (b)(7)(A) required ███ to support DARPA ACO from August 1, 2020 to December 17, 2020. ███ timecard confirmed ███ charged ███ direct labor to this contract as a ███████ subcontractor. Specifically, ███ billed this DARPA SETA support work as direct labor from August 3, 2020 to November 3, 2020, via job code (b)(7)(A).



58. On October 9, 2020, (b)(7)(A), (b)(6), (7)(C) ███████, DoD SAPCO, notified SAPCO Directors and Security Directors of DARPA's decision to suspended ███ SAP accesses across the SAP community – DARPA, DoN, USAF, etc. – via reciprocity suspension. At the time of this notification, Glines was on maternity leave. In her absence, (b)(7)(A), (b)(6), (b)(7)(C)

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**2019002173-80SI-B0/F**                                                                                    17

▮▮▮▮▮ , N9SP, assumed her duties as the Acting Director of Security and led N9SP's effort to suspend ▮▮▮▮ DoN SAP access. ▮▮▮▮ documented ▮▮▮▮ role in ▮▮▮▮ DoN SAP suspension in a timeline (Attachment 31).

59. On October 19, 2020, Glines returned from maternity leave and reassumed her duties as the Director of Security, N9SP. ▮▮▮ relinquished the role of Acting Director of Security and reassumed ▮▮▮ duties as ▮▮▮▮ . ▮▮▮ continued to work on ▮▮▮▮ DoN SAP suspension.

60. On November 12, 2020, ▮▮▮ forwarded an e-mail chain entitled "FW: (U//FOUO – PII/FOUO//HVSACO) DARPA Suspension – ▮▮▮ (Contains PII)" to Glines about DARPA's decision to suspend ▮▮▮▮ SAP accesses (Attachment 31). Glines responded to ▮▮▮ and wrote the following:

▮▮▮▮▮

| | |
|---|---|
| **From:** | Glines, Kristina |
| **Sent:** | Thursday, November 12, 2020 3:21 PM |
| **To:** | ▮▮▮▮ |
| **Subject:** | RE: (U//FOUO - PII//FOUO//HVSACO) DARPA Suspension - ▮▮▮ (Contains PII) |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

~~UNCLASSIFIED//FOR OFFICIAL USE ONLY - Privacy Sensitive.  Any misuse or unauthorized disclosure may result in both civil and criminal penalties.//FOUO//HVSACO~~

I need to recuse myself from this specific case. This SETA works for my husband's company. I don't want any decision to appear bias.

61. Although Glines acknowledged this actual conflict of interest, and the need to recuse herself; she chose to ignore her own guidance and instead took over from ▮▮▮ and directly inserted herself into this matter where she participated, personally and substantially, into a matter that she had a personal financial interest (Attachments 32 and 33).

62. Throughout Glines work on N9SP's decision to suspend, or not suspend ▮▮▮▮ DoN SAP accesses, she interacted with a multitude of security professionals to include, but not limited to, personnel assigned to N9SP, NELO, DoD SAPCO, USAF SAPCO, and DARPA SAPCO.  At no time did Glines ever disclose to any of these parties that ▮▮▮▮ was an employee of her husband's company, she had an actual conflict of interest, and a personal financial interest in this matter.  Glines never requested guidance, waiver of exemption from disqualification, or disclosed this conflict to her supervisor, ▮▮▮ or DoN OGC.  Instead, Glines kept this information a closely guarded secret and only disclosed this conflict to DCIS agents on October 12, 2022 (Attachment 23).

63. During the interview with DCIS, Glines admitted that when she became involved in the ▮▮▮▮ DoN SAP suspension matter, circa November 2020, she knew ▮▮▮ worked for her

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

CUI



husband's company. Glines also knew ███████ worked at DARPA on a ███████████ contract. Initially, Glines questioned DARPA's decision to suspend ███████ SAP accesses; however, she acknowledged that if she did not suspend ███████ DoN SAP accesses it would look like "favoritism" towards her husband's company. Glines understood that without SAP access, ███████ could not perform his SETA contract work at DARPA, and subsequently could not bill ██ direct labor to the contract. Instead, ███████ salary would have to be paid by █ █████████████ as overhead. Glines' personal and substantial involvement in this particular matter had a direct and predictable effect on an outcome that could affect her personal financial interest.

64. Glines admitted sharing information about ███████ SAP suspension with her husband as it was being adjudicated. Glines acknowledged she shared non-public information with her husband; however, did not believe this was wrong or inappropriate. Glines rationalized her actions wherein she told agents she would have shared this type of information with other corporate leaders who requested information about their employee in the same situation. As such, she was sharing information she would have shared with others. Glines did not feel this was inappropriate behavior.

65. Glines ultimately agreed with DARPA's decision to suspend ███████ DoN SAP accesses. Glines recommended ███████ DoN SAP access be suspended to ███████, who in turn made the final decision to suspend ███████ DoN SAP accesses. Agents interviewed N9SP, DoD SAPCO, USAF SAPCO, and DARPA SAPCO personnel to determine if Glines tried to dissuade them from suspending ███████ SAP accesses; she did not. There is no evidence Glines used her position to attempt to influence anyone not to suspend ███████ SAP accesses, or do anything illegal or unethical that benefitted ███████████ (Attachments 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, and 43). Glines admitted that she should not have participated in this matter, should have recused herself, and notified ███████ of her conflict; decisions she now regrets.

## KRISTINA GLINES REQUESTED JOINT ACCESS DATABASE ENVIRONMENT ACCOUNTS FOR ████████████████████ EMPLOYEES

66. Glines admitted that she requested DoD SAPCO JADE accounts for her husband, and other Blue Sky Innovator employees, while acting in her official capacity as the Director of Security, N9SP (Attachment 23). On January 17, 2019, Glines, electronically approved and submitted a request to DoD SAPCO for the creation of a JADE account for her husband.

67. ████████████ JADE (b)(7)(A), (b)(6), (7)(C), DoD SAPCO, confirmed ██ office received the request from Glines to create an account for ███. There were no justifications or comments listed as to why ███ needed a JADE account. ███████ approved the creation of the JADE account and issued ████ an account with "General User" privileges (Attachments 44 & 45). ████████ completed a JADE User Agreement and listed his organizational assignment as the Office of Naval Research/PMR-51 (Attachment 46).

68. Glines reported she approved and submitted multiple JADE account requests to DoD SAPCO for her spouse and other Blue Sky Innovator employees. Glines explained she submitted the

**WARNING**

~~This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.~~

**2019002173-80SI-B0/F**                                                                                    19

requests for Blue Sky Innovator employees because they were required to maintain JADE accounts as a function of their SETA duties on U.S. Navy contract N3237B-15-D-6816, wherein ▮▮▮▮▮▮▮▮▮▮ was a subcontractor to ECS Federal, LLC (Attachment 15).

69. Glines explained she received multiple request from the Navy Program Office to create JADE accounts for Blue Sky Innovator SETAs. Glines explained she approved the creation of the JADE accounts as a function of her duties as the Director of Security in support of the Navy Program Office. Glines claimed she was the only person that could issue JADE accounts and subsequently did so as a function of her official duties. Glines claimed her failure to approve the accounts would have negatively impacted the program.

70. Investigative action confirmed ▮▮▮▮ supported a U.S. Navy program office, associated to PMR-51, as a SETA via contract N3237B-15-D-6816. ▮▮▮▮'s timecard confirmed he charged his direct labor to this contract as a ▮▮▮▮ subcontractor. Specifically, ▮▮▮▮ billed his U.S. Navy support work as direct labor from January 2019 to October 2019, via job code "Navy – ECS Federal – B2-SC-132010" (Attachment 47).

71. Glines acknowledged she approved and submitted the JADE accounts for ▮▮▮▮▮▮▮ employees but did not believe her actions were inappropriate. Glines reported she would never do it again.

## KRISTINA GLINES PARTICIPATION IN OFFICIAL GOVERNMENT MEETINGS WITH HER HUSBAND

72. Glines was asked if she ever disclosed classified information to her husband for which he did not have a need-to-know. Glines reported she had never done this. To date, there is no evidence Glines has ever made any unauthorized disclosers of classified information to any individuals not authorized to receive that information. Glines reported she never discusses classified information with her husband; however, Glines reported she may have had a meeting or call with her husband where they discussed classified information.

73. Glines was asked how many meetings she attended where her husband represented ▮▮▮▮▮▮▮▮▮▮▮. Glines reported it "probably happened a handful of times." Glines explained she attended meetings where her husband attended in his capacity as a ▮▮▮▮▮▮▮▮▮▮ SETA. ▮▮▮▮ attended these meetings as a ▮▮▮▮▮▮▮▮▮▮ SETA supporting the U.S. Navy via the ECS Federal, LLC contract N3237B-15-D-6816 (Attachment 15). This is the same contract wherein Glines approved JADE accounts for her husband and other ▮▮▮▮▮▮▮ SETAs supporting the contract. This contract supports DoN SAP equities that fall under Glines' jurisdiction as the Director of Security, N9SP.

74. Glines explained she attended the meetings in her official capacity as the Director of Security while her husband attended the meeting as a SETA. In addition to her husband's participation, other Government personnel attended the meeting to discuss security efforts for Navy programs involving DoN SAP equities. Glines reported the meetings included discussions about the program, program security, security related decisions, managing test plans, and transporting

**WARNING**
~~This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.~~

CUI

**2019002173-80SI-B0/F**                                                                          20

assets.  Glines attended these meetings because, by virtue of her position as the Director of Security for N9SP, her approval was needed.

75.  Glines did not think her attendance at the meetings with her husband was wrong.  When challenged on the appropriateness of her attendance at these meetings, Glines countered and explained she needed to go the meetings and "if anything, it would be he's [    ] not allowed to go to the meeting" and "if anybody is getting kicked out, he's [    ] the one should have been kicked out.  Not me."  Glines did not think there was anything concerning about being in the same meetings with her husband.  Glines believed she had to be there as a function of her duties as the Director of Security.

**KRISTINA GLINES MISUSE OF POSITION & FAILURE TO SEPARATE PERSONAL AND BUSINESS RELATIONSHIPS**

76.  Agents obtained and reviewed Glines' U.S. Navy unclassified and CNET classified e-mails.  The unclassified email data set was not complete, it did not include emails that were permanently deleted.  The number of missing emails is unknown.

77.  Emails were identified that demonstrated as early as 2015, Glines willingly misused her position; failed to separate personal and business relationships; and disregarded her obligation to abide by the ethical standards expected of a Government employee.  Others, such as subordinates and friends, accommodated Glines inappropriate and unethical requests.

78.  The first known instance was on September 1, 2015, when Glines requested [    ], (b)(7)(A), (b)(6), (7)(C) [    ], N9SP, to check on the status of her husband's Program Access Request (PAR) (Attachment 48).  In the e-mail, Glines wrote the following:

| | |
|---|---|
| From: | "Glines, Kristina CIV" <Organization/First Administrative Group/Recipients/kristina.glines> |
| Sent: | 9/1/2015 5:40:27 PM -0400 |
| To: | (b)(7)(A), (b)(6), (b)(7)(C) |
| Subject: | PAR |
| Attachments: | smime.p7m |

Hi [    ]

have a semi-personal PAR request. Can you see where [    ] (my husband) PAR is in our system?  He mentioned it has been held up in the Navy for some time, but I have no idea where.

Thanks!
Kristina

79.  [    ] was interviewed and [    ] provided information about the aforementioned request (Attachment 49).  [    ] reported that, at the time of the request, Glines was his immediate supervisor.  [    ] was in charge of the PAR adjudication process and this request fell within his jurisdiction.  [    ] reported the only difference with this particular PAR request was that it was for Glines' husband.  [    ] opined [    ] would have reviewed the PAR and determined if access was needed based upon a review of the justification provided.  Sometimes PARS would have to go through the Office of the Chief of Naval Operations (OPNAV) Special Programs

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

CUI

**2019002173-80SI-B0/F**                                                                 21

Division (N89) for final review. ███████ could not recall if ████'s PAR was approved, but believed it was, and ████ had a valid official need for the access.

80. With regard to the appropriateness of Glines using her position to speed up the approvals process for her husband, ███████ opined there was nothing wrong with it. ███████ explained that regardless of Glines relationship with ████, it was in her professional interest to move PARS through the system. Furthermore, ███████ stated the PAR for ████ would have been reviewed eventually, so the approval was based on a legitimate need for SAP access. ███████ stated romantic or familial relationships between Government employees and contractors were perhaps slightly more closely scrutinized, but maintained there was nothing wrong with Glines intervening on her husband's behalf. ███████ reported ████ did not feel compelled to speed up the approval process for ████'s PAR.

81. On September 2, 2015, ███████ e-mailed Glines the status of her husband's PARs (Attachment 50). ███████ wrote the following:

From: ███(b)(7)(A), (b)(6), (b)(7)(C)███
Sent: Wednesday, September 02, 2015 6:55 AM
To: Glines, Kristina CIV
Subject: RE: PAR

Good Morning Kristina,

Here is the data on your hubby:

- Initiated on 4 Jun.
- Shuffled around in the Program Office until 10 Jul when it was sent to N89 bypassing the CSO.
- Rejected by N89 on 22 Jul (back to PO).
- Sent to CSO on 23 Jul.
- CSO ████ rejected back to PO on 26 Aug - LOCN conflicts with supplemental paperwork (yes, with the loss of ███(b)(7)(A), (b)(6), (b)(7)(C)███ we are that
        behind...making progress though).
- Currently with ███████ after shuffling around the PO for a couple of days.

82. On September 3, 2015, Glines thanked ███████ for checking on the status of her husband's PARs. Glines asked ████ to let her know when ████'s PARS made it back to N89 (Attachment 50).

83. Glines cavalier attitude is fully on display via a September 16, 2015 email exchange between her and her husband regarding his PAR status (Attachment 51). In this exchange, Glines told her husband his PAR was at N89. ████ told Glines to have ███████ call ███████ and jokes "Fyi I think this constitutes direction from a Government superior." In response, Glines jokingly wrote "Lol…I can't call and expedite PARs for my family :-)." ████ was carbon copied on the e-mail.

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                                                      22

| From: | "Glines, Kristina CIV" <Organization/First Administrative Group/Recipients/kristina.glines> |
|---|---|
| Sent: | 9/16/2015 12:56:51 PM -0400 |
| To: | (b)(7)(A), (b)(6), (b)(7)(C) |
| Subject: | RE: PAR |
| Attachments: | smime.p7m |

...ol... I can't call and expedite PARs for my family :-)

-----Original Message-----
From: ████████████████@darpa.mil]
Sent: Wednesday, September 16, 2015 12:54 PM
To: (b)(7)(A), (b)(6), (b)(7)(C)
Cc: Glines, Kristina CIV
Subject: FW: PAR

Fyi I think this constitutes direction from a government superior

84. ████ was interviewed about this e-mail exchange (Attachments 52). ████ reported ████ relationship with Glines is predominately of a personal nature, which includes having dinner at ████ and Glines' home. ████ reported Glines' husband, ████, is ████ friend and work colleague at DARPA.  They have maintained a personal relationship since 2015.

85. ████ recalled the e-mail and explained that ████and ████ typically would not have reached out to Glines for assistance in getting this type of access request moving; however, ████ stated they were trying to "move bureaucracy along." ████ further explained that the usual process for getting a PAR through the system involved routing the request through the OPNAV Special Programs Division (N89). ████ stated this process was inefficient so, on occasion, ████and ████ would go to Glines to try to expedite the paperwork. ████ explained that in the position ████held at that time, ████was able to facilitate the submission of PARS, but was not involved in processing the PARS. Hence, ████required Glines' assistance.

86. As to the appropriateness of ████ using his wife to speed up PAR approvals for himself, ████ did not believe there was anything wrong with what Glines and ████ did. ████ explained that regardless of Glines' intervention, ████'s PAR would have been reviewed by all the same people, so the approval was still based on a legitimate need for SAP access. ████ opined the interaction between ████ and Glines was only unusual because of their relationship as a married couple.

87. In April 2016, Glines again demonstrated her willingness to compromise her ethics by assisting her husband using her official position. Glines did so wherein ████ asked Glines to check the status of their Facility Clearance (FCL) (Attachment 53). ████ asked Glines to check if ████████ had a FCL, and if not, could she find someone who could check.  Glines reported that ████ needed to update their CAGE code.  It is unclear through the exchange if she

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

was able to get the answer ████ requested; however, Glines confirmed there was a problem with their CAGE code.

88. Glines was asked how many times she executed database checks using U.S. Government computer systems for her husband.  Glines acknowledged she did this for her husband but did not provide a specific number of instances.  Glines reported she accessed U.S. Government computer systems to find out her husband's security clearance access date.  Glines acknowledged that the ████████████ FSO could do this as part of his industrial security duties.  Glines rationalized running database checks for her husband as something she would do for other companies and personnel.  As such, Glines did not believe she was doing anything wrong, nor was she doing a favor for her husband.  In retrospect, Glines acknowledged she should not have conducted these checks (Attachment 23).

89. A review of Blue Sky Innovator PARS obtained from DoD SAPCO and N9SP failed to identify any PARS wherein Glines was an approver.  The PARS obtained from DoD SAPCO was limited in scope to a sample of PARS for ████, (b)(7)(A), (b)(6), (b)(7)(C) , ██████ provided investigators with N9SP JADS PAR results for ████████████ DoN PAR accesses.  A review of the records, did not identify Glines as an approver on the PARS.

## DEPARTMENT OF JUSTICE

90. On October 18, 2022, DCIS contacted (b)(7)(A), (b)(6), (b)(7)(C) Department of Justice, Criminal Division, Public Integrity Section, Washington, D.C. to discuss the October 12, 2022, DCIS voluntary interview of Glines via Garrity.  Reporting Agent briefed ████ on the investigation of Glines and her admission of various ethics violations.  Based on this discussion, the Public Integrity Section declined to open a criminal investigation regarding the conflict of interest allegations concerning Glines.  Should new information and/or evidence be developed, the Department of Justice will be re-contacted to reconsider prosecution (Attachment 54).

## OFFICE OF GOVERNMENT ETHICS NOTIFICATION

91. On October 18, 2022, DCIS filed *OGE Form 202 – Notification of Conflict of Interest Referral Part 1: Initial Notification; Part 2: Disposition of Referral; and Part 3: Consideration of Corrective Action* with the Office of Government Ethics, Washington D.C.  The notification pertained to ethics violations committed by Glines.  The Office of Government Ethics Tracking Number for this referral is OGE-2023-0443 (Attachment 55).

## COORDINATION OF REMEDIES

92. Glines' decisions, actions, and behavior, raises serious questions about her eligibility, suitability, and fitness to maintain a security clearance, occupy a national security sensitive position, and access classified material.  As such, DCIS will coordinate administrative remedies with DoD SAPCO, N9SP, DoN OGC, and DCSA to address these concerns.

93. On October 12, 2022, ████ suspended Glines from work and suspended her access to SAPs.  No decision as to suspension duration, reassignment, termination, etc. has been made.

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

CUI

**2019002173-80SI-B0/F**                                                         24

94. ▋▋▋'s willingness to utilize, and exploit, his wife's position as the Director of Security, N9SP, in furtherance of his business, raises serious questions about his, and his company's, ethical conduct and commitment to comply with federal law. ▋▋▋'s behavior runs counter to *48 C.F.R. § 52.203-13 – Contractor Code of Business Ethics and Conduct.* As such, this investigation will be referred to the Interagency Suspension and Debarment Committee, and the appropriate debarring officials, for suspension and debarment consideration. This referral will be made at the conclusion of this investigation.

## CONCLUSION

95. The investigation of Glines is finished and culpability established; however, this investigation will remain open pending final resolution of the other allegations (b)(7)(A) ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

96. (b)(7)(A) ▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

**CUI**

Attachments:



1. (b)(7)(A)
2. (b)(7)(A)
3. (b)(7)(A)
4. (b)(7)(A)
5. (b)(7)(A)
6. (b)(7)(A)
7. (b)(7)(A)
8. (b)(7)(A)
9. (b)(7)(A)
10. (b)(7)(A)
11. (b)(7)(A)
12. (b)(7)(A)
13. (b)(7)(A)
14. (b)(7)(A)
15. (b)(7)(A)
16. DCIS Form 1 – Marriage License – ▉▉▉▉▉ and Kristina Glines, dated February 9, 2021
17. DCIS Form 1 – Property Records ▉▉▉▉▉ and Kristina Glines, dated February 11, 2021
18. DCIS Form 1 – Kristina Glines – Navy Total Workforce Management Services Training Records, dated March 5, 2021
19. DCIS Form 1 – Kristina Glines Navy Ethics Training Modules, dated March 18, 2021
20. Department of the Navy, Office of General Counsel Ethics Documents – Kristina Glines, multiple dates
21. Memorandum for Kristina Glines – 2022 Annual Executive Branch Confidential Financial Disclosure Report (OGE 450), undated
22. (b)(7)(A), (b)(6), (b)(7)(C)
23. (b)(7)(A), (b)(6), (b)(7)(C)
24. (b)(7)(A), (b)(6), (b)(7)(C)
25. (b)(7)(A), (b)(6), (b)(7)(C)
26. (b)(7)(A), (b)(6), (b)(7)(C)

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

2019002173-80SI-B0/F                                                              26



27. (b)(7)(A)
28. (b)(7)(A)
29. (b)(7)(A)
30. (b)(7)(A), (b)(6), (b)(7)(C)
31. (b)(7)(A), (b)(6), (b)(7)(C)
32. (b)(7)(A), (b)(6), (b)(7)(C)
33. (b)(7)(A), (b)(6), (b)(7)(C)
34. (b)(7)(A), (b)(6), (b)(7)(C)
35. (b)(7)(A), (b)(6), (b)(7)(C)
36. (b)(7)(A), (b)(6), (b)(7)(C)
37. (b)(7)(A), (b)(6), (b)(7)(C)
38. (b)(7)(A), (b)(6), (b)(7)(C)
39. (b)(7)(A), (b)(6), (b)(7)(C)
40. (b)(7)(A), (b)(6), (b)(7)(C)
41. (b)(7)(A), (b)(6), (b)(7)(C)
42. (b)(7)(A), (b)(6), (b)(7)(C)
43. (b)(7)(A), (b)(6), (b)(7)(C)
44. DCIS Form 1 – Joint Access Database Environment Account Information, dated December 3, 2020
45. DCIS Form 1 – Joint Access Database Environment Account Information, dated October 6, 2022
46. ██████████, ██████████ Timesheet, multiple dates
47. E-mail entitled: "PAR," dated September 1, 2015
48. (b)(7)(A), (b)(6), (b)(7)(C)

49. E-mail chain entitled: "RE: PAR," various dates
50. E-mail Entitled: "RE: PAR," dated September 16, 2015
51. (b)(7)(A), (b)(6), (b)(7)(C)

52. E-mail entitled: "RE: Can you see if we have an FCL yet?," dated April 27, 2016
53. DCIS Form 1 – Department of Justice Prosecution Decision, dated October 18, 2022
54. DCIS Form 1 – Office of Government Ethics Referral – Kristina A. Glines, dated October 19, 2022

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

CUI

**2019002173-80SI-B0/F**                                                                27

**<u>Identity of Suspect(s):</u>**

| | |
|---|---|
| Name | : Kristina Arlene Glines |
| Alias | : Kristina Glines ■■■ |
| Social Security Number | : ■■■■■■■ |
| Date/Place of Birth | : ■■■■■■■■■■■■■■■■ |
| Race | : Caucasian |
| Sex | : Female |
| Residence | : 1605 Palm Springs Drive, Vienna, Virginia 22182 |
| Employment/Occupation | : Department of the Navy Special Programs Office/Department of the Navy Special Access Program Central Office/Director of Security |
| Driver's License Number and Issuing State | : ■■■■■■■ Virginia |

**WARNING**

This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS). Distribution of this document to other entities without authorization from DCIS is prohibited.

CUI

**2019002173-80SI-B0/F**                                                                28

Name                        : ███████████ ███
Alias                       : N/A
Social Security Number      : (b)(7)(A), (b)(6), (b)(7)(C)
Date/Place of Birth         : (b)(7)(A), (b)(6), (b)(7)(C)
Race                        : Caucasian
Sex                         : Male
Residence                   : 1605 Palm Springs Drive, Vienna, Virginia
Employment/Occupation       : ███████████, Incorporated/President
                              and Chief Executive Officer

Driver's License Number       (b)(7)(A), (b)(6), (7)(C)
and Issuing State           :   Virginia

Prepared by:  (b)(6), (b)(7)(C)          Approved by:  (b)(6), (b)(7)(C)

(b)(6), (b)(7)(C)(b)(6), (b)(7)(C)

**WARNING**
This document is the property of the Department of Defense Office of Inspector General, Defense Criminal Investigative Service (DCIS).  Distribution of this document to other entities without authorization from DCIS is prohibited.

# EXHIBIT DD

| From: | foiarequests |
|---|---|
| To: | "rsander@sandergroup.org"; foiarequests |
| Cc: | "Cecilia Franceski" |
| Subject: | RE: RE: Interim Response to FOIA Requests (DODOIG-2024-REF-000025, 2024-000119, and 2024-000316) |
| Date: | Wednesday, April 3, 2024 3:00:14 PM |

Good Afternoon Mr. Sander,

My apologies for spelling your name incorrectly below.

Thank you for your email. Our office is coordinating with DCIS. They are reviewing potentially responsive documents regarding your request and have made it a priority. As the documents become available, we shall process accordingly and send you responsive.

We thank in advance for your patience.

Sincerely,

Barb Gonzalez
Division Chief
DOD OIG FOIA

Main FOIA Tele:  703-604-9775
FAX: 571-372-7498

---

**From:** rsander@sandergroup.org <rsander@sandergroup.org>
**Sent:** Tuesday, April 2, 2024 10:18 AM
**To:** foiarequests <foiarequests@DODIG.MIL>
**Cc:** 'Cecilia Franceski' <cfranceski@sandergroup.org>
**Subject:** [Non-DoD Source] RE: Interim Response to FOIA Requests (DODOIG-2024-REF-000025, 2024-000119, and 2024-000316)

Ms. Gonzalez,

Thank You for this Interim Response to Ms. Glines FOIA Requests. We're still sorting through the documents and redactions. Unfortunately, we did not receive any of the attachments listed in the ROI, the video of Ms. Glines Interview, or the Transcript of the Interview, which we believe Ms. Glines is entitled to receiving as part of her Requests and under the law. As you can see from the ROI itself, these documents include exculpatory information, mitigating information, and information which is needed for Ms. Glines to properly respond to the SOR. Can you please let us know when you and the DODIG FOIA Office plan on providing this information, which as you're aware has been requested on an expedited basis? Thank You in advance for your handling!

Bob

Robert J. Sander, Partner
The Sander Group, PLLC
Alexandria, Virginia
(703) 459-0442
www.sandergroup.org

ATTENTION - CONFIDENTIALITY NOTICE:  This e-mail transmission (and/or the attachments accompany it) may contain confidential information which is protected by the attorney-client privilege, attorney work product, or other privilege.  The information is intended only for the use of the intended recipient.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.

**From:** foiarequests <foiarequests@DODIG.MIL>
**Sent:** Friday, March 29, 2024 2:10 PM
**To:** 'rsander@sandergroup.org' <rsander@sandergroup.org>
**Subject:** Interim Response to FOIA Requests (DODOIG-2024-REF-000025, 2024-000119, and 2024-000316)

Good Afternoon Mr. Sander's,

Attached please find our interim response to the FOIA requests in the subject line above regarding your client and Blue Sky Innovators, Inc.

In order to ensure safe transmission, we have password protected the responsive document. The password will be sent in a separate email with the subject line of **"To Open Document"**.

After reviewing this interim response, should you feel any part of your ongoing request(s) for information is no longer necessary, please let us know.

Thank you for your patience and we hope you have an amazing weekend.


Sincerely,

Barbara Gonzalez
Division Chief

Freedom of Information, Privacy and Civil Liberties Office
Department of Defense Office of Inspector General
4800 Mark Center Drive, Suite 10B24, Alexandria, VA 22350-1500
Phone: 703-604-9775 | Fax: 571-372-7498

**From:** Powers, Eric, OIG DoD
**Sent:** Friday, March 22, 2024 10:07 AM
**To:** 'rsander@sandergroup.org' <rsander@sandergroup.org>
**Subject:** DODOIG-2024-REF-000025 FOIA Request Acknowledgement Letter

Dear Mr. Sander:

Attached please find our acknowledgement letter pertaining to your FOIA request.

v/r


*Eric R. Powers*

**Government Information Specialist**
**Department of Defense Office of Inspector General Freedom of Information Act**
**4800 Mark Center Drive**
**Alexandria, VA 22350-1500**

**This e-mail is from the Department of Defense Office of Inspector General**
**{DoD OIG}. It may contain Controlled Unclassified Information {CUI},**
**including information that is Law Enforcement Sensitive {LES}, subject to**
**the Privacy Act, and/or other privileges and restrictions that prohibit**
**release without appropriate legal authority. Do not disseminate without the**
**approval of the DoD OIG.  If received in error, please notify the sender by**
**reply e-mail and delete all copies of this message.**