## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KRISTINA GLINES,** | |
| Plaintiff, | |
| v. | Civil Action No. 24-cv-1222 |
| **DEPARTMENT OF DEFENSE,** *et al.* | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Kristina Glines brings claims under the Fifth Amendment's Due Process Clause, Title VII, the Administrative Procedure Act, the Freedom of Information Act, and the Privacy Act over the loss of her job at the Navy. Defendants moved for partial dismissal of Counts V through X of Plaintiff's Complaint for failure to state a claim, improper venue, and for lack of jurisdiction.[1] Defs.' Mot. for Partial Dismissal and Mem. in Support Thereof at 1–37, ECF No. 7 ("Defs.' Mot."). Plaintiff separately moved for a preliminary injunction on Counts I through IV, her Freedom of Information Act and Privacy Act claims, to expedite records that she believes are necessary to litigate her other claims. Pl.'s Mot. for Emergency Prelim. Inj. and Mem. in Support Thereof at 1–21, ECF No. 9 ("Pl.'s Mot.").

Because the court either lacks subject matter jurisdiction, is the improper venue, or Plaintiff fails to state a claim, the court will GRANT Defendants' Partial Motion to Dismiss Counts V

---

[1] When referring to a component of the Department of Defense, such as the Defense Criminal Investigative Service, the Counterintelligence and Security Agency, or the Office of the Inspector General, the court will collectively refer to the "Department," unless a specific reference is necessary.

through X.  And because no preliminary injunction factor weighs in favor of her Freedom of Information Act and Privacy Act claims, the court will DENY Plaintiff's Motion for a Preliminary Injunction on Counts I through IV.

## I.     BACKGROUND

### A.  Security Clearance and Employment Termination

Beginning in 2017, Plaintiff served as the Navy's Special Access Programs Central Office Director of Security.  Compl. ¶ 10, ECF No. 1 ("Compl.").  Her job included overseeing and executing security functions, such as validating employee security clearances, mission needs, and accesses.  *Id.*  In April 2022, Defendant Howes became Plaintiff's supervisor.  *Id.* ¶ 14.

On October 11, 2022, Howes's Chief of Staff told Plaintiff that Howes was unlikely to rate her a five on her upcoming progress review—a score she had received just months earlier— regardless of her performance.  Plaintiff complained to the Equal Employment Opportunity ("EEO") investigator, *id.* ¶¶ 15–16, accusing Howes of creating a hostile work environment for the women in the office whom he supervised, especially older women.  *Id.* ¶¶ 16–17.  Plaintiff claimed that women "mostly in their 40s or older" received worse performance ratings compared to men and were "pressured out or removed."  *Id.* ¶ 17.

A day later, on October 12, Department officials contacted Plaintiff to ask her to voluntarily participate in an interview regarding a criminal investigation of a company part-owned by Plaintiff's husband.  *Id.* ¶ 18.  That same day, before the interview, Howes directed that Plaintiff's security clearance be revoked, and recommended that she be indefinitely suspended.  *Id.* ¶ 19.

Plaintiff's interview did not result in criminal or other action, and the Department closed its investigation of Plaintiff a couple weeks later, on October 26.  *Id.* ¶ 38.

Plaintiff's security clearance remained revoked, however, and her employment status in jeopardy. On November 3, she was given an opportunity to respond to the Navy's pending employment decision and submitted a memorandum accusing the Navy of lacking "any comprehensive or detailed written explanation" to justify firing her. *Id.* ¶ 42. On November 10, Howes responded, contending that the Department's interview established Plaintiff's "culpability." *Id.* ¶ 44; *see also id.* ¶¶ 62, 89; Compl., Ex. D at 1, ECF No. 1-10 ("Compl. Ex. D"). The Navy fired Plaintiff on December 8, 2022, on the grounds that she used her "public office for private gain." Compl. ¶¶ 45, 51. It informed Plaintiff that she could appeal her firing and security clearance revocation before the Equal Employment Opportunity Commission ("EEOC") or the Merit Systems Protection Board ("MSPB"). Compl., Ex. A at 000142, ECF No. 1-9 ("Compl. Ex. A"). She chose the former. Compl. ¶ 11 n.2. She then filed suit in this court, after multiple attempts to retrieve information regarding the Department's decisionmaking. *Id.* ¶¶ 96–134.

### B. FOIA and Privacy Act Requests

Plaintiff submitted five Freedom of Information Act ("FOIA") requests to three Department agencies: the Defense Counterintelligence and Security Agency, the Office of Inspector General, and the Navy. She sought expedited consideration of her requests to the Inspector General and the Navy. Only the Inspector General granted that request.

### i. Defense Counterintelligence and Security Agency

On November 20, 2023, Plaintiff submitted her first FOIA and Privacy Act request to the Department's Counterintelligence and Security Agency. Compl. Ex. I at 1–2, ECF. 1-10 ("Compl. Ex. I"). She filed her second and third requests in March 2024. Pl.'s Ex. B at 1, ECF No. 9-3

(Pl.'s Ex. B"). The first request sought records pertaining to Plaintiff's security clearance revocation and employment termination, starting in May 2021. Compl. Ex. I at 1. The second requested the underlying records that the agency used to revoked Plaintiff's security clearance. Defs.' Opp'n Mot., Ex. 1 at 1, ECF No. 13-1 ("Defs.' Ex. 1"). And the third pertained to Plaintiff's background investigation. Defs.' Opp'n Mot., Ex. 2 at 1, ECF No. 13-2 ("Defs.' Ex. 2").

The Department did not respond until after Plaintiff's second FOIA request. On March 14, 2024, in response to that request, it produced some records and withheld others under certain FOIA and Privacy Act exemptions. *Id.* It also stated that some records required a third-party waiver. *Id.* On March 20, 2024, the Department responded to Plaintiff's first and third FOIA requests, agreeing to produce some records and withholding others. Defs.' Ex. 1 at 1.

### ii. Department of Defense, Office of Inspector General

Plaintiff submitted two FOIA and Privacy Act requests to the Department's Office of Inspector General on November 20, 2023, and March 1, 2024, respectively. Defs.' Opp'n Mot., Decl. of Mark Dorgan ¶¶ 6, 12, ECF. No. 13-8 ("Dorgan Decl."). The Department responded to the first on November 30, 2023, withholding any responsive records under Exemption 7(A). *Id.* ¶ 8. Plaintiff appealed the determination, *id.* ¶ 9, and on March 7, 2024 the Department responded, once again withholding all responsive records and confirming that it had received Plaintiff's request for an expedited appeal. *Id.* ¶¶ 14–15. On March 15, 2024, both appeals were granted, and the requests were remanded to the Inspector General's FOIA Office for further processing. *Id.* ¶ 17. On March 19, 2024, the Department expedited both remanded requests. *Id.* ¶ 18.

On remand, the Department produced two relevant documents. On March 29, 2024, it produced a redacted, twenty-eight-page Report of Investigation of the company that was the

subject of Plaintiff's interview. *Id.* ¶ 19; Defs.' Ex. 3 at 1, ECF No. 13-3 ("Defs.' Ex. 3").  On May 21, 2024, the Department also produced a redacted 114-page transcript of Plaintiff's interview with the Department's Criminal Investigative Service.  Dorgan Decl. ¶ 20; Defs.' Ex. 4 at 1, ECF No. 13-4 ("Defs.' Ex. 4").

The Department maintains that it continues to search for, locate, and produce documents responsive to Plaintiff's other record requests.  Dorgan Decl. ¶ 21.  It estimates there are about 3,000 pages of responsive records.  *Id.*

### iii.  Department of the Navy

On November 20, 2023, Plaintiff submitted a FOIA request to the Navy.  Defs.' Opp'n Mot., Decl. of Richard Strong ¶ 6, ECF No. 13-9 ("Strong Decl.").  After receiving no response, she inquired about the status of that request on March 19, 2024, and asked that her request be expedited.  *Id.* ¶ 9.  On May 2, 2024, the Navy contacted Plaintiff to narrow the scope of her request, and Plaintiff responded that same day with a specific list of individuals who might have responsive documents.  *Id.* ¶ 12.  The Navy responded on May 24, 2024, explaining that it was experiencing technical issues related to transitions in information technology and that "Plaintiff was not entitled to expedited processing."  *Id.* ¶ 10; *see id.* ¶¶ 8–10.  It also explained that because courts have found that employees "have no right to a security clearance," Plaintiff had no due process rights associated with a security clearance, and therefore there was "no basis to provide and expedited response on a theory" that Plaintiff faced a "loss of due process rights."  Defs.' Opp'n Mot., Ex. 5 at 2, ECF. No. 13-5 ("Defs.' Ex. 5") (citations omitted).  Despite its nearly two-month delay in responding to Plaintiff's request to expedite, and its denial of that request, the Navy asserts that it is attempting to expeditiously locate and process all responsive records, estimated

currently to be 1,600 or more pages, cautioning that there still may be some additional delay in further production.  Strong Decl. ¶¶ 13–14.

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss

Plaintiff bears the burden of demonstrating that the court has subject matter jurisdiction, given that "[t]here is a presumption against federal court jurisdiction." *Logan v. Dep't of Veterans Affs.*, 357 F. Supp. 2d 149, 153 (D.D.C. 2004) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83 (1936)).  The court must assume the truth of all factual allegations and must review "the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  "[A] court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).  Yet, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).

Dismissal is warranted if venue is improper or inconvenient under Federal Rule of Civil Procedure 12(b)(3).  Venue is proper: (1) in a district where "any defendant resides, if all defendants are residents of the state in which the district is located"; (2) in a district in which "a substantial part" of the events giving rise to the suit occurred; or (3) if venue would not be proper in any district for either of those reasons, wherever the defendants are subject to personal

jurisdiction. 28 U.S.C. § 1391(b)(1)–(3). In ruling on a motion to dismiss for improper venue, "the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper, but, if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *King v. Caliber Home Loans, Inc.*, 210 F. Supp. 3d 130, 133–34 (D.D.C. 2016) (alteration removed) (internal quotations and citation omitted). Whether to transfer or dismiss a case is solely within the "sound discretion of the district court." *Hamilton v. JP Morgan Chase Bank*, 118 F. Supp. 3d 328, 333 (D.D.C. 2015).

Finally, a motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must contain enough facts to state a claim that is plausible on its face by alleging facts that, if assumed to be true, would allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 555–56 (2007).

### B. Motion for Preliminary Injunction

"A preliminary injunction is an extraordinary remedy that "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail, a plaintiff bears the burden of showing that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Courts in this jurisdiction evaluate the four

preliminary injunction factors on a "sliding scale"—if a "movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291–92 (D.C. Cir. 2009).

## III.   ANALYSIS

### A.  Motion to Dismiss

As it must in every case, the court must assure itself of jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998); *Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007) ("In every case, the jurisdictional requirements of Article III must be present before a court may proceed to the merits."). Accordingly, the court will consider Defendants' jurisdictional challenges first. Defs.' Mot. at 21–26.

### i.   Procedural Due Process Claims

Plaintiff brings three claims under the Fifth Amendment's Due Process Clause. In Count V she alleges that she was removed from duty and pay without substantive notice, save for a memorandum stating that the Navy's decision was based on "improper usage of public office for private gain"; accordingly, she "had no meaningful opportunity to be heard"; Compl. ¶ 171. In Count VI, Plaintiff alleges that she suffered more than reputational injury when she was "effectively barred from government work due to charges calling into question [her] integrity and honesty"; *Id.* ¶ 178. In Count VIII, she claims that Defendants violated her due process rights by failing to conduct a search, timely respond, or produce responsive documents to her FOIA requests, and that FOIA was used "as a shield to prevent the release of documents." *Id.* ¶ 197.

Defendants contend that these counts must be dismissed because Plaintiff failed to exhaust her administrative remedies under the Civil Service Reform Act ("CSRA"). Defs.' Mot. at 21–24.

Alternatively, they argue that Count VI should be dismissed insofar as it brings a claim under the Federal Torts Claims Act for reputational harm because Plaintiff did not name the United States as a defendant; and that even if she had, sovereign immunity is not waived for defamation or misrepresentation.  *Id.* at 24–25.  Finally, they contend that Count VIII should be dismissed because it relates only to FOIA, not constitutional due process.  *Id.* at 23.  Because Defendants' arguments principally turn on whether the CSRA deprives this court of subject matter jurisdiction, the court will address that issue first.

Enacted by Congress in 1978, the CSRA provides a "comprehensive system for reviewing personnel action taken against federal employees."  *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)).  Under the CSRA's "comprehensive and exclusive" remedial scheme, *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009), *cert. denied*, 558 U.S. 989 (2009), an employee may appeal a major adverse employment action—for example, termination or demotion, *see* 5 U.S.C. § 7512—to the MSPB, *id.* § 7513(d).  If they do not prevail before the MSPB, the employee may pursue judicial review in the Federal Circuit.  *Id.* § 7703.  As the Supreme Court has explained, the CSRA "sets out the method for covered employees to obtain review of adverse employment actions" in such "painstaking detail" that "it is fairly discernible that Congress intended to deny [certain] employees an additional avenue of review in district court."  *Elgin*, 567 U.S. at 11–12.

The D.C. Circuit has likewise concluded, even before *Elgin*, that the CSRA's remedial scheme is "exclusive" and "constitutes the remedial regime for federal employment and personnel complaints."  *Nyunt v. Chairman*, *Broad. Bd. of Governors*, 589 F.3d 445, 448 (D.C. Cir. 2009)

(collecting cases); *see also Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005). Consequently, "covered employees appealing covered agency actions" must "proceed exclusively through the statutory review scheme, even in cases in which the employees raise constitutional challenges to federal statutes." *Elgin*, 567 U.S. at 10; *see also Steadman v. Gov., U.S. Soldiers' Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990) ("[F]ederal employees may not circumvent [the CSRA's] structure even if their claim is based as well on the Constitution.").

Accordingly, the CSRA "generally deprives district courts of subject-matter jurisdiction over claims within its ambit, that is, claims brought by covered employees challenging covered employment actions." *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 364 (D.D.C. 2020). There are, however, some exceptions. As relevant here, aggrieved employees may bring their constitutional claims for equitable relief in district court if, for example, they would otherwise be denied "any [] forum" to adjudicate their claim. *Elgin*, 567 U.S. at 9 (quoting *Webster v. Do*e, 486 U.S. 592, 603 (1988)).

Nonetheless, even for "claims arising directly under the Constitution," the CSRA's exhaustion requirement is a "jurisdictional prerequisite." *Weaver v. U.S. Info Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996); *see also Steadman*, 918 F.2d at 967 ("When [] statutory and constitutional claims are 'premised on the same facts' and the CSRA remedy 'would have been fully effective in remedying the constitutional violation,' exhaustion [of CSRA remedies] is mandated." (quoting *Andrade v. Lauer*, 729 F.2d 1475, 1493 (D.C. Cir. 1984))). A claim may escape the CSRA's exhaustion requirement if it is a constitutional challenge that "raises issues totally unrelated to the CSRA procedures." *Steadman*, 918 F.2d at 967; *see also Weaver*, 87 F.3d at 1433–34.

Plaintiff's argument that her security clearance revocation and indefinite suspension is not subject to the CSRA is unavailing. Pl.'s Mem. of Points and Aut. in Opp'n to Defs. Mot. for Partial Dismissal at 11–l2, ECF No. 8 ("Pl.'s Opp'n"). The MSPB has jurisdiction over major "adverse actions" by federal agencies—including termination—as set forth in chapter 75 of the CSRA. 5 C.F.R. § 1201.3(a)(1); *accord* 5 U.S.C. § 7513(d). Plaintiff was a Navy employee who could have challenged her indefinite suspension at the MSPB. *See, e.g.*, 5 U.S.C. § 7512 (a suspension exceeding 14 days is appealable to MSPB); *id.* § 7702. Appellate review of MSPB decision lies with the Court of Appeals for the Federal Circuit. *Fausto*, 484 U.S. at 446–47.

Yet Plaintiff asserts—with no rebuttal by Defendants—that even if the CSRA covers her indefinite suspension, she satisfied its exhaustion requirement because she filed a claim with the EEOC, not the MSPB. Pl.'s Opp'n at 29–30; *see* Defs.' Mot. at 7–28. Plaintiff is at least correct that the EEOC is an alternative venue. Plaintiff has a "mixed case—an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination." *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999). She therefore can choose between filing a "mixed case complaint" with the Navy's EEO office, and then with the EEOC, or filing a "mixed case appeal" directly with the MSPB. *See* 29 C.F.R. § 1614.302(b). By statute, the relevant agency EEO office and the MSPB can and must address both the discrimination claim and the appealable personnel action. *See* 5 U.S.C. § 7702(a). Within thirty days of a final decision, Plaintiff can file an appeal with the MSPB or a civil discrimination action in federal district court. *See* 29 C.F.R. §§ 1614.302(d)(1)(ii), 1614.302(d)(3), 1614.310(a). If 120 days pass without a final decision from the agency's EEO office, the same avenues of appeal again become available: Plaintiff can file either a mixed case appeal with the MSPB or a civil action in district court. *See*

5 U.S.C. §§ 7702(e)(1)(A), 7702(e)(2); 29 C.F.R. §§ 1614.302(d)(1)(i), 1614.310(g); 5 C.F.R. § 1201.154(b)(2).

Although Plaintiff could have exhausted her administrative remedies at the EEOC, she does not allege that she, in fact, did so. *See* Compl. ¶¶ 1–134. Indeed, it is unclear whether, despite participating in a "listening session" with the Navy's EEO, *id.* ¶ 11, she actually filed a complaint with the EEO Office. Even if the court could infer as much, Plaintiff has not alleged that she received a final order from the EEOC, or that she filed this action within 30 days of any EEOC decision. *See* 29 C.F.R. §§ 1614.302(d)(1)(ii), 1614.302(d)(3), 1614.310(a). Plaintiff only alleges that she filed a claim before the EEOC on November 2, 2023, that the matter is ongoing, and that this case is "not meant to be a substitute for the current EEO Proceedings." Compl. ¶ 11 n.2; Pl.'s Opp'n at 30. But an ongoing matter is not a concluded or final one. "None of the few pieces of correspondence attached to the Complaint demonstrates that" Plaintiff has properly exhausted her administrative remedies. *Waller v. United States*, No. 06-cv-1112, 2006 WL 2472781, at *2 (D.D.C. July 7, 2006). And Plaintiff has provided no information regarding the status of her EEOC proceedings in subsequent briefing. *See* Pl.'s Opp'n Mot. at 21 n.15; Pls.' Supp. to Mot. and Request for Decision on Mot. for Emergency Prelim. Injunc. at 1–19, ECF No. 16 ("Pl.'s Supp. Mot."). Consequently, the court will grant Defendants' motion to dismiss Counts V, VI, and VIII because Plaintiff has not alleged that she has exhausted her claims before the EEOC, and thus the court lacks subject matter jurisdiction.

## ii. APA Claim

Count IX claims the Department and the Navy arbitrarily asserted that the basis for Plaintiff's termination was "culpability," even though no criminal charges were filed. Compl.

¶¶ 202–06; Compl. Ex. D. at 1. Defendants argue that this count must be dismissed because D.C. Circuit precedent forecloses Administrative Procedure Act ("APA") challenges to federal employment disputes. Defs.' Mot. at 18–21. The court agrees.

The CSRA's exclusive scheme for federal employment disputes similarly blocks Plaintiff's use of the APA to challenge her adverse employment decision—and it would do so even if the CSRA did not provide an avenue for judicial relief. Under binding D.C. Circuit precedent, "federal employees may not use the Administrative Procedure Act to challenge agency employment actions." *Filebark v. U.S. Dep't of Transp.*, 555 F.3d 1009, 1010 (D.C. Cir. 2009); *see also Fornaro*, 416 F.3d at 66–67; *Graham v. Ashcroft*, 358 F.3d 931, 933–35 (D.C. Cir. 2004); *Carducci v. Regan*, 714 F.2d 171, 172 (D.C. Cir. 1983). Seeking to create a system for handling federal employment disputes, Congress established the CSRA as an "integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Fausto*, 484 U.S. at 445. Federal employees therefore cannot use the APA to do an end-run around the CSRA's enforcement scheme because "the CSRA would be impermissibly frustrated by permitting, for lesser personnel actions not involving constitutional claims, an access to the courts more immediate and direct than the statute provides with regard to major adverse actions." *Filebark*, 555 F.3d at 1013 (quoting *Carducci*, 714 F.2d at 174). That is true regardless of whether the CSRA "provide[s] [] employees with no judicial review." *Id.* at 1014. Simply put, "what you get under the CSRA is what you get." *Fornaro*, 416 F.3d at 67.

Plaintiff argues that her APA claim is not about "actions taken," but about "actions the Government *failed to ta*ke when such actions are required." Pl.'s Opp'n at 20 (emphasis in

original).  This is a difference without a distinction, because "the law is clear that the relief (or lack thereof) provided in the CSRA precludes review under" the APA.  *Lamb v. Holder*, 82 F. Supp. 3d 416, 422 (D.D.C. 2015); *Fornaro*, 416 F.3d at 67 (noting that D.C. Circuit "cases have . . . recognized" "that no remedy was available under the APA for an employment claim as to which the CSRA provided no relief").

The court therefore lacks subject matter jurisdiction for Count IX, and Defendants' motion to dismiss it will also be granted.

### iii.  Substantive Due Process Claim

In Count VII, Plaintiff alleges that Defendants violated the Fifth Amendment's Equal Protection Clause "because she received differential treatment by the government due to membership in a protected class"—her sex and age.  Compl. ¶ 182.  Defendants are correct that this claim should be dismissed because claims for discrimination in federal employment must be brought under Title VII, if based on sex, and the Age Discrimination in Employment Act, if based on age.  Defs.' Mot. at 27–28.

Plaintiff "cannot recast" her Title VII discrimination claim as a constitutional claim. *Rogler v. Biglow*, 610 F. Supp. 2d 103, 105 (D.D.C. 2009), *aff'd sub nom. Rogler v. Gallin*, 402 F. App'x 530 (D.C. Cir. 2010); *Ethnic Employees of the Library of Cong. v. Boorstin*, 751 F.2d 1405, 1414–15, n. 12 & 13 (D.C. Cir. 1985).  The Supreme Court has made clear that Title VII is the "exclusive judicial remedy for claims of discrimination in federal employment."  *Brown v. Gen. Services. Admin.*, 425 U.S. 820, 835 (1976).  And Title VII clearly applies to Plaintiff's equal protection claim because it prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  That is Plaintiff's "same basic injury."  *Boorstin*, 751 F.2d at 1415.  District courts have routinely rejected plaintiffs' attempts to shoehorn a Title VII injury into another cause of action.  *Mitskog v. Garland*, No. 20-cv-1154, 2024 WL 1328436, at *6 (D.D.C. Mar. 28, 2024) (rejecting *Bivens* claim); *Brown v. Regan*, 2022 WL 17735636, No. 21-cv-2565 at *3 (D.D.C. Dec. 16, 2022), *aff'd*, No. 22-5345, 2024 WL 1002569 (D.C. Cir. Mar. 1, 2024) (rejecting personal injury and a discrimination claim against the EPA).

Nor can Plaintiff reframe Count VII as a Fifth Amendment Due Process claim based on age discrimination.  "It is undisputed that the ADEA provides the exclusive remedy for a federal employee who claims age discrimination."  *Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C. Cir. 1991); *Chennareddy v. Dodaro*, 698 F. Supp. 2d 1, 21 n.26 (D.D.C. 2009).  Moreover, even if Plaintiff had stated a claim regarding Count VII, she did not name the proper defendants.  Compl. at 1 (naming only the Departments of Defense and Navy without specifically listing their Secretaries in the caption of the Complaint).  "The only proper defendant in a civil action under Title VII is 'the head of the department, agency, or unit[.]'"  *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 81–82 (D.D.C. 2009) (quoting 42 U.S.C. § 2000e–16(c) (other citations omitted)).

Accordingly, Count VII will be dismissed for failure to state a claim.

### iv. Title VII Claim

In Count X, however, Plaintiff does make an actual Title VII claim, which Defendants argue should be dismissed for improper venue because the allegedly unlawful employment practice occurred in Arlington, Virginia, not the District of Columbia.[2]  Defs.' Mot. at 7–13.

Under Title VII, venue is appropriate (1) where the "employment practice is alleged to have been committed," (2) in "the judicial district in which the employment records relevant to such practices are maintained and administered," or (3) in "the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(f)(3); *see also* 29 U.S.C. § 794(a)(1).  "If the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."  42 U.S.C. § 2000e-5(f)(3).  A plaintiff's failure to satisfy any of the venue requirements means "venue is improper."  *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 12 (D.D.C. 2009) (citing 42 U.S.C. § 2000e–5(f)(3); *Washington v. Gen. Elec. Corp.*, 686 F. Supp. 361, 363 (D.D.C. 1988)).

Plaintiff's Title VII claim does not appear to fall within any of the Title VII venue provisions such that this court would be the proper venue.  Regarding the first venue requirement, Plaintiff's Navy job and the alleged harm were at the Pentagon in Arlington, Virginia, not Washington, D.C.  *See e.g.*, Compl. ¶¶ 9–11, 207–13.  Arlington was where the Navy's decision to suspend Plaintiff's security clearance, to propose her indefinite suspension without pay, and to implement the same, took place.  *Id.*  The only connection to this district is that the Pentagon also

---

[2] Because the court resolves Count X on venue grounds, it need not address Defendants' argument regarding whether Plaintiff's claims are time barred.  Defs.' Mot at 16–18.

has a Washington, D.C. mailing address—but that does not change "where" Plaintiff's harm was "committed." 42 U.S.C. § 2000e-5(f)(3). Nor does the last venue provision change the analysis. Plaintiff does not allege or otherwise indicate that she planned to move to or work in Washington, D.C. to avoid, escape, or remedy her alleged harm. *See Hamilton v. Transp. Sec. Admin.*, 263 F. Supp. 3d 317, 320 (D.D.C. 2016); *Ellis v. Gruenberg*, No. 15-cv-0025, 2015 WL 9272835, at *2 (D.D.C. Dec. 18, 2015). In fact, Defendants provided declarations indicating that Plaintiff "would still be working at the Pentagon" had the Navy not suspended her. Def.'s Mot., Decl. of Kristen Goodby ¶ 10, ECF No. 7-14 ("Goodby Decl."); *see also* Def.'s Mot., Decl. of Kimberly Sweeney ¶ 7, ECF No. 7-16, ("Sweeney Decl.").

Regarding Title VII's second venue provision, the location of relevant records, the parties dispute whether the "complete master set" of Plaintiff's employment records, are in Arlington, or only some of them. Defs.' Mot. at 11; Pl.'s Opp'n at 27–28. But according to Defendants' declaration, the employment records relevant here, involving Plaintiff's security clearance revocation and indefinite suspension, are all located at the Pentagon in Arlington, Virginia. Sweeney Decl. ¶¶ 2–3, 5. To the extent that Plaintiff contends that the location of the Pentagon's server is consequential, the location of the actual records relevant to the claims at issue here is far more compelling. *See Hakeem v. Mayorkas*, No. 22-cv-2674, 2024 WL 2383068, at *4 (D.D.C. May 23, 2024) (finding improper venue where "plaintiff ha[d] not alleged that his employment records are maintained in the District of Columbia"). The court is satisfied that those relevant records are located in Virginia.

In conclusion, because Plaintiff fails to meet the relevant criteria for venue in this district, and because Plaintiff requests transfer to the Eastern District of Virginia if venue is proper there,

the court will order the case transferred.  *Hamilton v. Paulson*, No. 07-cv-1365, 2008 WL 4531781, at *3 (D.D.C. Oct. 10, 2008); Pl.'s Opp'n at 29 n.23.

### B.  Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction on her first four claims under FOIA and the Privacy Act.[3]  Pl.'s Mot. at 5.  For Count I, she argues that the Navy "failed to answer" her March 19, 2024, request to expedite within the 10-day statutory deadline.  Pl.'s Mot. at 16. For Count II, she contends that the Department's Criminal Investigative Service's denial of her request for expedited treatment was untimely.  *Id.*  For Count III, she argues that the Department did not move fast enough in producing its expedited investigation report, and that its production was insufficient.  *Id.*  Finally, for Count IV, Plaintiff attempts to make a Privacy Act argument. *Id.* at 15, 18–19 (using the name of the statute three times in the brief's argument section without making a separate argument as to what relief, distinct from FOIA, it provides).  Accordingly, Plaintiff asks the court to compel Defendants to answer the first four counts of the Complaint within seven days and to produce the requested documents within twenty days of the court's judgment. *Id.* at 22.

As noted earlier, a preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (internal quotation marks and citations omitted).  It "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Mazurek v. Armstrong*,

---

[3] Plaintiff separately asks the court to find that her first four counts are conceded because Defendants failed to respond to them in its initial Partial Motion to Dismiss.  Pl.'s Mot. at 5.  The court declines to do so because Defendants are not required to challenge all of Plaintiff's claims in its first responsive motion.  *See* Fed. R. Civ. Pro. 12 (a)(4).

520 U.S. 968, 972 (1997) (internal citations and quotation marks omitted) (emphasis in original).  In order to carry her burden of persuasion, Plaintiff would have to show that she satisfies the four *Winter* factors, that: (1) "[s]he is likely to succeed on the merits"; (2) "[s]he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [her] favor"; and (4) "an injunction is in the public interest."  555 U.S. at 20.  She has not made such a showing.

Before analyzing each *Winter* factor, the court will first address the FOIA legal framework as applied to Plaintiff's claims.

### i.  Background

A plaintiff who requests an expedited FOIA response must "demonstrate[] a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I), unless the request falls within the "other cases" that the agency determines also warrant expedition.  *Id.* § 552(a)(6)(E)(i)(II).  In the context of Plaintiff's request, a compelling need means "that a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."  *Id.* § 552(a)(6)(E)(v)(I).  An agency may also grant an expedited request if the requester's "loss of substantial due process rights is imminent."  32 C.F.R. § 286.8(e)(1)(ii)(A).  Whether to expedite record production is within the agency's discretion, but its decision "shall be provided" "within 10 days after the . . . request[.]"  *Id.* § 552(A)(6)(E)(ii)(I).  Even if it denies expedited treatment, the agency still "shall process as soon as practicable any request for records."  *Id.* § 552(a)(6)(E)(iii)."

### ii. Likelihood of Success on Freedom of Information Act and Privacy Act Claims

### a.  The Navy FOIA Request

Plaintiff argues that the Navy "failed to answer" her March 19, 2024, request to expedite within the 10-day deadline.  Pl.'s Mot. at 16.  The Navy responded on May 28, 2024—months later.  *Id.*  In its response, it claimed that the delay was caused by "administrative errors from the transition in [FOIA technology platforms]."  Defs.' Ex. 5 at 1.  It also argued that Plaintiff did not demonstrate that she was entitled to expedited processing because: (i) she needed the requested information to prepare for a civil proceeding before Defense Criminal Investigative Service, which has concluded; (ii) the need for the information for use in civil proceedings is generally insufficient for expedition; and (iii) the request did not provide details regarding why the records were needed and warranted expedited processing pursuant to regulation.  *Id.* at 2.

"The presumption of agency delay raised by failing to respond to an expedited request . . . is certainly rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable."  *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 39 (D.D.C. 2006).  According to the Navy's declarant, its delay was due to a technology transfer. Strong Decl. ¶ 8.  That suffices to rebut the presumption here.

To the extent that Plaintiff also challenges whether the Navy improperly denied her request for expedited treatment, the court finds that she is also unlikely to succeed on the merits of that claim as well.  The Navy explained in its denial that Plaintiff "did not [] articulate how, specifically, a lack of expedited processing would result in a loss of her due process rights."  Defs.' Ex. 5 at 2. It went on to note that "[c]ourts have determined that employees have no right to a security clearance."  *Id.*  Therefore, it found "no basis to provide an expedited response on a theory that

[Plaintiff] faces an imminent loss of due process rights." *Id.* The court finds that the Navy's explanation was "reasoned." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (noting that agencies have a duty to engage in "reasoned decisionmaking," which may be found if "the decision was based on a consideration of the relevant factors" and was not otherwise a "clear error of judgment" (internal quotations and citations omitted)).

### b. The Department's FOIA Request

Plaintiff argues that she is likely to succeed on the merits of her expedited FOIA claim because the Department: (i) failed to produce the report within the 20-business day deadline for expedited requests and did not provide a date by which it would comply pursuant to 5 U.S.C. § 552(a)(6)(B)(i); and (ii) never provided the attachments to the report nor the video of Plaintiff's interview. Pl.'s Mot. at 16. She therefore seeks production of the report within 20 calendar days. *Id.* at 22. Defendants argue that FOIA does not "dictate a specific, compressed scheduled for processing a request, even when those requests are expedited." Defs.' Opp'n at 9. Further, they argue that despite Plaintiff's complaints about the records she received, she "has not demonstrated that the relevant agencies failed to conduct a reasonable search within the meaning of FOIA or that any redactions were improperly applied." *Id.* at 11. The court agrees with Defendants on both fronts.

To start, Plaintiff's first argument rests on a misunderstanding of FOIA, which requires agencies to respond to expedited requests "10 days after the date of the request," 5 U.S.C. § 552(a)(6)(E)(ii)(I), not 20 days, and engage in "expeditious consideration of administrative appeals," without a prescribed timeline. *Id.* § 552(a)(6)(E)(ii)(II). FOIA does not require the agency to provide a date to respond to Plaintiff's expedited request if it needs an extension, only

that the agency "may" extend a written notice of no more than "ten working days" "setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.* § 552(a)(6)(B)(i). Here, while it is unclear when Plaintiff requested an expedited appeal of her second FOIA appeal, the Department at least "received" it on March 7, 2024. Dorgan Decl. ¶ 15. Assuming that Plaintiff filed her expedited request the same day that the Department received it, the Department notified Plaintiff that her expedited request had been granted on March 19, 2024—8 business days later, well within the 10-day timeframe. *Id.* ¶ 18.

More importantly, even if the Department had been tardy in responding to the request for expedited treatment, that still would not weigh in Plaintiff's favor. The "penalty" for failing to meet FOIA's 10-business day timeline is not the imposition of another explicit timeline, but rather "that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013). Once FOIA's deadlines have passed, "the agency may continue to process the request, and the court (if suit has been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Id*; *see also Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 10 (D.D.C. 2015) (FOIA deadlines "serve[] primarily as a means to obtain immediate judicial supervision over an agency's response to an outstanding FOIA request."). Given the Department's unrebutted representations that they continue to actively process Plaintiff's other requests, reviewing potentially responsive records of 3,000 or more pages, Dorgan Decl. ¶¶ 18–20, the court finds that Plaintiff has not established a likelihood of success on this claim.

Plaintiff's challenge to the redacted Report of Investigation that the Department produced to her is also unlikely to succeed on the merits. Plaintiff cannot bypass the "oft-protracted" FOIA process, in which the Department must justify its redactions in the normal course. *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 39 n.9 (D.D.C. 2014) (noting that the plaintiff "cite[d] no authority requiring this Court to order submission of the index on such an abbreviated timetable"). To the extent Plaintiff seeks to know why certain portions were redacted, that explanation is typically provided in a *Vaughn* index filed in conjunction with a summary judgment motion. *Schwarz v. Dep't of Treasury*, 131 F.Supp.2d 142, 147 (D.D.C. 2000). That is the context in which the court ordinarily considers the adequacy of a search. *See Cheeseman v. U.S. Dep't of Def.*, 2023 WL 4350031, at *2 (D.D.C. May 9, 2023); *Aguiar v. DEA*, 865 F.3d 730, 738 (D.C. Cir. 2017). No reason exists here, and the Plaintiff articulates none, to avert the normal FOIA process, and "require [the Department] to create an index and declaration justifying its decision to withhold certain documents until the agency has completed processing [Plaintiff's] FOIA request and the parties have had an opportunity to negotiate regarding any documents that are withheld." *Elec. Priv. Info. Ctr.*, 15 F. Supp. at 46 n.9.

### c. <u>Privacy Act Claim</u>

Finally, although Plaintiff's Motion mentions the "Privacy Act" eight times, it contains no legal arguments as to why Plaintiff is entitled to relief on that claim. Pl.'s Mot. at 5, 10, 15, 18–19. Similarly, Plaintiff's argument about the Department's Criminal Investigative Service's alleged delay in denying her FOIA request is essentially one sentence. *Id.* at 16 ("The only document that DCIS provided after Ms. Glines filed suit was a heavily redacted transcript of Ms. Glines' interview which both includes and redacts other exculpatory and mitigating information,

such that the exculpatory information is not fully available to Ms. Glines.").  "A party forfeits an argument by failing to raise it in his opening brief."  *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019); *Walker v. District of Columbia*, 2024 WL 4133622, at *3 (D.D.C. Sept. 10, 2024). Consequently, the court will consider Plaintiff's likelihood of success arguments with respect to those two claims as forfeited.

### iii.  Irreparable Harm

Plaintiff claims that she will suffer loss of income, reputation, friends, and accrued legal fees if she is denied relief.  Pl.'s Mot. at 17–18.  But none of these factors rise to the level of irreparable harm, and Plaintiff has not demonstrated how the delay in producing responsive documents would cause the harms she alleges.  To be sure, courts have found that "the mere fact that economic losses may be unrecoverable does not, in and of itself, compel a finding of irreparable harm."  *Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52–53 (D.D.C. 2011).  The harms Plaintiff complains of are neither "certain" nor "great."  *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).

### iv.  Remaining Factors Governing Preliminary Relief

Finally, "the balance of equities" and "the public interest," *Aamer v. Obama*, 742 F.3d 1023, 1044 (D.C. Cir. 2014), here favor Defendants.  Imposing a compressed deadline on Defendants for processing would run the risk of overburdening them and could even lead to the mistaken release of protected information.  *See Daily Caller*, 152 F. Supp. 3d at 14 ("Requiring the agency to process and produce [requested] materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA."). And requiring production by a date certain, without any legitimate basis for doing so, might

actually disrupt FOIA's expedited processing regime rather than implement it. *See Elec. Privacy Info. Ctr.*, 15 F. Supp. at 47 ("[A]llowing [a plaintiff] to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more pressing needs.").

Courts in this district routinely deny requests for preliminary injunctions in FOIA cases. *See, e.g.*, *Long v. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (denying motion for preliminary injunction to compel processing within twenty days given the "broad scope of plaintiff's requests," explaining that "[t]he government has not yet had a chance to review its files, prepare and file a dispositive motion, and provide the Court the information necessary to make a decision on any material that might be subject to an exemption"); *Progress v. Consumer Fin. Prot. Bureau*, No. 17-cv-686, 2017 WL 1750263, at *1 (D.D.C. May 4, 2017) (denying request for a preliminary injunction mandating expedited processing and production where requester failed to show a likelihood of success on the merits and irreparable harm). This court sees no basis for departing from that course here, and Plaintiff has provided none.

## IV.    CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Partial Motion to Dismiss. Counts V–X of Plaintiff's Complaint will be DISMISSED WITHOUT PREJUDICE. Count X will be TRANSFERRED to the United States District Court for the Eastern District of Virginia. Plaintiff's Motion for a Preliminary Injunction on Counts I–IV will be DENIED. Accordingly, Plaintiff's Supplemental Motion for a Preliminary Injunction will be DENIED AS MOOT. A separate order shall follow.

Date:  April 25, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge